Paul ANTRIM, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–92–195–CV.

Court of Appeals of Texas,
Austin.

Aug. 25, 1993.

Rehearing Overruled Nov. 3, 1993.

Jim B. Brookshire, Georgetown, for appellant.

Ken Anderson, Dist. Atty., Georgetown, for appellee.

Before CARROLL, C.J., and ABOUSSIE and JONES, JJ.

JONES, Justice.

Paul Antrim, appellant, appeals from the trial court's judgment in a civil-forfeiture case awarding various subdivisions of the State a total of $301,391. In four points of error, Antrim complains of the legal and factual sufficiency of the evidence. We will affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 13, 1990, State Trooper Lee Richards stopped Antrim and a companion, August Mauer, while they were driving a truck southbound on Interstate Highway 35 ("IH–35"). Richards stopped Antrim and ·Mauer because neither was wearing a seat-

belt. Richards observed that Mauer, the driver, had a driver's license that differed from the truck's state of licensing. Richards questioned Antrim and Mauer regarding their destination. After receiving inconsistent answers, Richards requested consent to search the truck. Both Antrim and Mauer consented.

In searching the bed of the truck, Richards discovered a cardboard box containing $301,-391 in cash. Richards observed that both the money and the box had an odor of marihuana, and he observed a residue of what appeared to be marihuana in the box. Richards arrested Antrim and Mauer and seized the money. Antrim claimed ownership of the money, and Mauer denied any ownership interest. Richards testified at trial that when he questioned Antrim as to the source of the money, Antrim indicated that the money belonged to several of his co-workers.

The State initiated civil-forfeiture proceedings pursuant to provisions of the Texas Code of Criminal Procedure, alleging that the $301,391 in cash was "contraband." Contraband, as defined by the Code, includes (1) property that constitutes "the proceeds gained from the commission of a felony" under the Texas Controlled Substances Act, Tex.Code Crim.Proc.Ann. art. 59.01(2)(C) (West Supp.1993), or (2) property "used or intended to be used in the commission of: (i) any felony under" the Texas Controlled Substances Act, Tex.Code Crim.Proc.Ann. art. 59.01(2)(B)(i) (West Supp.1993).

Following a bench trial, the trial court filed thirteen detailed findings of fact.[1] The court also filed three conclusions of law in which it concluded that the evidence demonstrated that the money at issue "was used and intended to be further used in the commission of a felony prohibited by the Controlled Substances Act" and "was gained from the commission of a felony prohibited by the Controlled Substances Act"; that there was probable cause to seize the money; and that

---

1. The findings of fact are not numbered consecutively 1–13; rather, they are numbered 1–11 and 15–16.

"[t]here was a substantial connection between the cash and the criminal activity defined by the Controlled Substances Act." Based on these findings and conclusions, the trial court rendered judgment granting forfeiture of the $301,391, awarding the Texas Department of Public Safety $120,556.40, the Williamson County District Attorneys Office $150,695.50, and the Round Rock Police Department $30,139.10.

## DISCUSSION

■ In his first two points of error, Antrim complains that there was no evidence or, alternatively, insufficient evidence to support the trial court's "finding" that the money at issue was derived from a narcotics transaction. The trial court labeled its finding that the cash "was gained from the commission of a felony prohibited by the Controlled Substances Act" as a conclusion of law; however, this "conclusion" is actually a finding of fact. We interpret Antrim's first two points of error as attacking this finding. Although this finding of fact appears among the conclusions of law, the trial court's label is not controlling on appeal, and we may treat it as a finding of fact. *Ray v. Farmers' State Bank*, 576 S.W.2d 607, 608 n. 1 (Tex.1979).

■ Money is subject to forfeiture if it is derived from manufacturing, delivering, selling or possessing a controlled substance. Tex.Code Crim.Proc.Ann. arts. 59.01(2), 59.-02(a) (West Supp.1993); *State v. $11,014.00*, 820 S.W.2d 783, 784 (Tex.1991). In a forfeiture proceeding, the state must establish probable cause for seizing a person's property. *Id.* Probable cause in this context is "a reasonable belief that a 'substantial connection exists between the property to be forfeited and the criminal activity defined by the statute.'" *Id.* (quoting *$56,700 in U.S. Currency v. State*, 730 S.W.2d 659, 661 (Tex. 1987)).

■ In the present case, the State offered no direct evidence to demonstrate that the money at issue was derived from the sale of narcotics. The State, however, may meet its burden of proof by presenting sufficient circumstantial evidence. *See $11,014.00*, 820 S.W.2d at 785. When relying on circumstantial evidence, "the State is required to offer proof which does more than raise a mere surmise or suspicion regarding the source of money." *Money of the United States $8,500.00 v. State*, 774 S.W.2d 788, 792 (Tex. App.—Houston [14th Dist.] 1989, no writ). Nonetheless, the State is not required to exclude every other possible way in which the money might have been acquired; it is required only to prove the fact through a balance of probabilities. *Id.*

■ Unchallenged findings of fact "occupy the same position and are entitled to the same weight as the verdict of a jury." *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex.1986). Such findings are conclusive and binding on this Court unless there is no evidence to support the findings or if the contrary is established as a matter of law. *Id.* To determine whether there is no evidence to support a trial court's findings, we must consider only the evidence and inferences tending to support the findings and disregard all evidence and inferences to the contrary; if there is no evidence to support the findings, we must then examine the entire record to see if the contrary proposition is established as a matter of law. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989); *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982); *see also $11,014.00*, 820 S.W.2d at 784.

Antrim does not challenge the thirteen detailed findings of fact filed by the trial court. Thus, if there is more than a scintilla of evidence to support those findings, those "found" facts may be used to support the general finding (labeled conclusion of law one) that Antrim does challenge. In its first eleven findings of fact, the trial court found that Antrim and Mauer were stopped by Richards while traveling southbound on IH–35; that Antrim and Mauer gave different stories as to their destination; that approximately $300,000 in cash was discovered in a cardboard box in the vehicle occupied by

Antrim and Mauer; that Antrim claimed ownership of the money; that Antrim gave several different stories as to the source of the money; that both the box containing the money and the money itself had a strong odor of marihuana; that a trained and certified dog alerted on both the money and the box separately; that the box contained visible green residue, later verified through lab tests as marihuana; that at the time Antrim was stopped, he was making his second 48-hour round trip from Michigan to Texas in less than thirty days; and that IH–35 is a major drug smuggling route, with drugs, including marihuana, heading north and cash heading south. In the remaining two findings of fact, the trial court addressed the credibility of two witnesses: Antrim and Sergeant Hollis Riggins of the Department of Public Safety, an expert witness for the State. The trial court found that "Antrim's testimony was not believable or credible" and that Riggins's testimony was credible and established that the money at issue was derived from a narcotics transaction.

At trial, testimony was presented that is consistent with the first eleven findings of fact. This evidence was presented by Richards; William Guinn, a supervisor of Drug Analysis for the Department of Public Safety; Riggins, the State's expert witness; and Antrim himself. Because there exists underlying testimony consistent with the trial court's findings, we conclude that there was more than a scintilla of evidence to support such findings. Accordingly, the first eleven findings are conclusive and binding on this Court.

With respect to finding of fact fifteen (that Antrim's testimony was not believable or credible), Antrim testified at trial that in 1982, prior to his father's death, his father gave him $325,000 as a means for providing for the family after his father's death.[2] An-

trim further testified that the rest of the family was unaware of this money because he had told no one of its existence. To rebut Antrim's testimony, the State pointed out that Antrim could offer no evidence to confirm the money's existence through any "paper trail." The State offered evidence to demonstrate that, from 1982 forward, Antrim took actions that were inconsistent with actions a person who held such funds would take.[3] In addition, the State presented evidence based on Antrim's father's lifetime earnings to demonstrate that it was highly unlikely that Antrim's father would have been able to accumulate $325,000 during his lifetime. Because the State offered substantial rebuttal evidence undermining the credibility of Antrim's testimony, we conclude that there was more than a scintilla of evidence to support finding of fact fifteen.

In finding of fact sixteen, the trial court determined that "[c]redible expert testimony established that the money was derived from a narcotics transaction." At trial, the State's expert witness, Riggins, testified that he has served as a narcotics investigator for nine years, and that he has been involved in many narcotics cases; that IH–35 is a major corridor for drug trafficking; that this trafficking is normally done by vehicle; and that drugs are usually paid for with cash. Riggins further testified in response to a hypothetical question embracing the general facts as detailed previously that it was his opinion that the money at issue in this case was derived from a narcotics transaction. We conclude that Riggins's testimony provides more than a scintilla of evidence to support the trial court's finding that credible expert testimony established that the $301,391 was derived from a narcotics transaction.

Although Antrim does not challenge any of the specific findings referenced above, he does challenge the trial court's general find-

---

**2.** This testimony contradicted Richards's testimony that Antrim had previously indicated that he obtained the money from several of his co-workers.

**3.** The State presented evidence to demonstrate that Antrim filed a financial statement in 1985 showing his cash assets as only $8,000; that he obtained several loans since 1982 at the prevailing market interest rate; and that he kept the money out of the banking system thus forgoing substantial interest he could have earned since 1982.

ing that the $301,391 "was gained from the commission of a felony prohibited by the Controlled Substances Act." Because the thirteen above-referenced findings are conclusive and binding, to sustain Antrim's first two points of error, we would have to conclude that, despite these established facts, the evidence presented at trial was either legally or factually insufficient to support the trial court's finding that the money at issue was derived from a narcotics transaction.

■ When both legal and factual sufficiency points are raised, we must first examine the legal sufficiency of the evidence. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981). In addressing Antrim's legal-sufficiency point, we apply the no-evidence standard of review articulated previously.

■ Our reading of the case law surrounding civil-forfeiture proceedings reveals no concrete rules to be applied when evaluating whether evidence is sufficient to support a judgment granting forfeiture. Various factors, however, have been considered by courts when evaluating the sufficiency of the evidence. Among the factors considered are (1) the proximity of the money to the drugs and to evidence of drug trafficking, *Barron v. State*, 746 S.W.2d 528, 531 (Tex.App.—Austin 1988, no writ); (2) evidence that the money was previously in contact with drugs, e.g., through a canine alert, *$11,014.00*, 820 S.W.2d at 785; *United States v. $215,300 United States Currency*, 882 F.2d 417, 419 (9th Cir.1989); (3) suspicious activity consistent with drug trafficking, *$11,014.00*, 820 S.W.2d at 784; *$215,300 United States Currency*, 882 F.2d at 419; (4) the amount of money at issue, *United States v. $38,600 in U.S. Currency*, 784 F.2d 694, 698 (5th Cir.

1986); *$215,300 United States Currency*, 882 F.2d at 419; and (5) the presence of expert testimony indicating that there was probable cause to seize the property subject to forfeiture, e.g., that a substantial connection exists between the property to be forfeited and the criminal activity, *United States v. 228 Acres of Land*, 916 F.2d 808, 814 (2d Cir.1990).

■ In the present case, the above-referenced conclusive and binding findings of fact demonstrate: (1) as to the proximity factor, the money was located in a box that contained marihuana residue, as confirmed by lab tests; (2) as to the contact factor, both the money and the box had a strong odor of marihuana, as confirmed through a canine alert; (3) as to the suspicious-activity factor, when Antrim was stopped, he was traveling southbound on IH–35, a major drug smuggling route, on his second 48–hour round trip from Michigan to Texas; Mauer and Antrim gave inconsistent answers when questioned regarding their destination, and Antrim gave several different stories as to the source of the money; (4) as to the amount-of-money factor, a substantial sum of money, $301,391 in currency, was discovered in a box, both of which had the odor of marihuana and with residue of marihuana contained in the box; and (5) as to the expert-testimony factor, Riggins offered credible testimony indicating that the $301,391 was derived from a narcotics transaction. These findings, taken together, are legally sufficient to give rise to more than a mere surmise or suspicion that the money was derived from a drug transaction.[4] Accordingly, we conclude that the evidence presented was legally sufficient to support the trial court's finding that the $301,391 "was gained from the commission of a felony prohibited by the Controlled Substances Act."

■ We now turn to Antrim's challenge to the factual sufficiency of the evidence.

4. Antrim directs our attention to *United States v. $38,600 in U.S. Currency*, 784 F.2d 694 (5th Cir. 1986), as a factually similar case in which the court concluded that the evidence demonstrated merely a surmise or suspicion that the money was connected with criminal activity. We find this case distinguishable, in part because the evidence in the present case linking the money to a narcotics transaction is more substantial than

the evidence presented in the *$38,600* case. Moreover, the marihuana residue and drug paraphernalia discovered in the *$38,600* case were located separately from the money at issue. In the present case, the money was discovered in a box that contained marihuana residue, and both the money and the box had a strong odor of marihuana as confirmed by a canine alert.

When reviewing a factual-sufficiency point, the trial court's findings of facts are reviewable by the same standards applied when reviewing the factual sufficiency of the evidence to support jury findings. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991). As a result, we must consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Money of the United States $8,500.00,* 774 S.W.2d at 792; *see also Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986). Based on our prior analysis of the relevant factors to be considered and the conclusive and binding nature of the thirteen specific findings of fact, and after reviewing the entire record, we conclude that the trial court's finding that the $301,391 "was gained from the commission of a felony prohibited by the Controlled Substances Act" is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

Based on the foregoing conclusions, we overrule Antrim's first two points of error.

In his third and fourth points of error, Antrim contends that there was no evidence or, alternatively, insufficient evidence to support the trial court's finding that the money at issue was "intended to be used" in a narcotics transaction. We have concluded above that the evidence was sufficient to uphold the trial court's judgment on the basis that the money was *derived from* a narcotics transaction. This basis alone is sufficient to support the trial court's judgment granting forfeiture. *See* Tex.Code Crim.Proc.Ann. arts. 59.01(2)(C), 59.02(a) (West Supp.1993). Accordingly, we need not reach points of error three and four.

## CONCLUSION

Based on our disposition of Antrim's points of error, we affirm the judgment of the trial court.