COURT
OF APPEALS

SECOND DISTRICT
OF TEXAS

FORT WORTH

 

 

NO. 2-06-434-CV

 

 

$574.37
U.S. COIN AND                                                                                                          
APPELLANT

CURRENCY; ONE 1998
DODGE

PICKUP; AND ALL ITEMS

LISTED ON EXHIBIT AA@

 

V.

 

THE
STATE OF TEXAS                                                            APPELLEE

                                                                                                        

 

                                              ------------

 

           FROM THE 371ST
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

                                                                                                        

                                              ------------

I.  Introduction








This is an appeal from the
civil forfeiture of $537.44[2]
and a 1998 Dodge pickup truck under chapter 59 of the Texas Code of Criminal
Procedure.  In two points, Freddie Bone
alleges that (1) the evidence is legally and factually insufficient to support
the trial court=s finding
that the money in the amount of $537.44 and the Dodge truck were contraband and
(2) thus that both were improperly forfeited to the State.  We will affirm.

II.  Factual and Procedural Background

In June 2005 Officer Bud
Murphy of the Lakeside Police Department, acting on a tip from another law
enforcement agency, began investigating Bone for dealing drugs.  Officer Murphy began his investigation by
questioning people coming from Bone=s residence and conducting trash searches, both of which confirmed
Officer Murphy=s suspicions
that Bone was dealing drugs and that drugs were present in Bone=s house. 

Based on this evidence,
Officer Murphy obtained a search warrant for Bone=s house, the Dodge pickup truck that Bone drove, and another pickup
truck that is not relevant to this appeal.[3]  While the police were executing the search
warrant, Bone drove up to the house in the Dodge truck with a female companion
in the passenger seat.   








The search of the house, and
specifically of Bone=s room,
yielded a variety of property that Officer Murphy believed Bone was using in
the delivery and distribution of narcotics. 
Among the discovered items were cash, safes, police scanners, cameras,
and cellular telephones.  The police also
discovered in Bone=s room a
large amount of drug paraphernalia, including 500 clear baggies that Officer
Murphy testified were normally used for narcotics distribution, glass pipes and
scales with white residue that the officer believed to be methamphetamine,
pipes with marijuana residue, and needles. 


After searching Bone=s room, the police turned their attention to the Dodge truck.  In the floorboard of the single-cab truck,
the police noticed a speaker box with a hole drilled in it.  Inside the speaker box, the police discovered
a clear baggie containing a white powdery substance, which later tested
positive for methamphetamine.  On Bone=s person, the police discovered more cash and the title to the truck. 

The police also searched the
woman who arrived with Bone in the Dodge truck. 
On her, police discovered a bag containing several clear baggies with a
white residue on them, one bag containing a green leafy substance which later
tested positive for marijuana, a syringe, five blue pills, two green pills, and
eight white broken pills. 








The State sought a ruling
from the trial court that the property discovered in Bone=s bedroom along with the Dodge truck and the cash were subject to
forfeiture.  The State alleged that all
items of property were contraband under chapter 59 of the Texas Code of
Criminal Procedure because they were used or intended to be used in the commission
of a felony under Chapter 481 of the Texas Health and Safety Code (the Texas
Controlled Substances Act). 

At a hearing on the seizure
and intended forfeiture of the property, the State presented the testimony of
Officer Murphy; Bone did not present any testimony.  At the conclusion of the hearing, the trial
court ruled that the cash on Bone=s person ($537.44) and the Dodge truck were contraband subject to
forfeiture but that the items and the cash ($36.93) found in the bedroom were
not.  The trial court reasoned that
because the Dodge truck was the only place where the police discovered an
illegal substance (and not merely residue), anything from inside the vehicle,
including items found on Bone=s person, was subject to forfeiture. 
Bone now appeals, challenging the legal and factual sufficiency of the
evidence to support the trial court=s judgment as to the money found on his person and the Dodge truck.

III.  Standard of Review








In a trial to the court where, as in this case, no findings
of fact or conclusions of law are filed, the trial court=s judgment implies
all findings of fact necessary to support it. 
Pharo v. Chambers County, 922 S.W.2d 945, 948 (Tex. 1996).  Where a reporter=s record is filed,
however, these implied findings are not conclusive, and an appellant may
challenge them by raising both legal and factual sufficiency of the evidence
points.  BMC Software Belg., N.V. v.
Marchand, 83 S.W.3d 789, 795 (Tex. 2002). 
Where an appellant raises such points, the applicable standard of review
is the same as that to be applied in the review of jury findings or a trial
court=s findings of
fact.  Roberson v. Robinson, 768
S.W.2d 280, 281 (Tex. 1989).  The
judgment must be affirmed if it can be upheld on any legal theory that finds
support in the evidence.  Worford v.
Stamper, 801 S.W.2d 108, 109 (Tex. 1990). 

A.     Legal Sufficiency








We may sustain a legal sufficiency challenge only when (1)
the record discloses a complete absence of evidence of a vital fact; (2) the
trial court is barred by rules of law or of evidence from giving weight to the
only evidence offered to prove a vital fact; (3) the evidence offered to prove
a vital fact is no more than a mere scintilla; or (4) the evidence establishes
conclusively the opposite of a vital fact. 
Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex.
1998), cert. denied, 526 U.S. 1040 (1999);
Robert W. Calvert, "No Evidence" and "Insufficient
Evidence" Points of Error, 38 TEX. L. REV. 361, 362B63 (1960).  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable fact-finder could and
disregard evidence contrary to the finding unless a reasonable fact-finder
could not.  City of Keller v. Wilson,
168 S.W.3d 802, 807, 827 (Tex. 2005). 

Anything more than a scintilla of evidence is legally
sufficient to support the finding.  Cont=l Coffee Prods.
Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); Leitch v. Hornsby,
935 S.W.2d 114, 118 (Tex. 1996).  When
the evidence offered to prove a vital fact is so weak as to do no more than
create a mere surmise or suspicion of its existence, the evidence is no more
than a scintilla and, in legal effect, is no evidence.  Kindred v. Con/Chem, Inc., 650 S.W.2d
61, 63 (Tex. 1983).  More than a
scintilla of evidence exists if the evidence furnishes some reasonable basis
for differing conclusions by reasonable minds about the existence of a vital
fact.  Rocor Int=l, Inc. v. Nat=l Union Fire Ins.
Co.,
77 S.W.3d 253, 262 (Tex. 2002). 

Any ultimate fact may be proved by circumstantial
evidence.  Russell v. Russell, 865
S.W.2d 929, 933 (Tex. 1993).  A fact is
established by circumstantial evidence when the fact may be fairly and
reasonably inferred from other facts proved in the case.  Id. 
However, to withstand a legal sufficiency challenge, circumstantial
evidence still must consist of more than a scintilla.  Blount v. Bordens, Inc., 910 S.W.2d
931, 933 (Tex. 1995).

 

 








B.     Factual Sufficiency

An assertion that the
evidence is factually insufficient to support a fact finding means that the
evidence supporting the finding is so weak or the evidence to the contrary is
so overwhelming that the answer should be set aside and a new trial ordered.  Garza v. Alviar, 395 S.W.2d 821, 823
(Tex. 1965).  We are required to consider
all of the evidence in the case in making this determination, not just the
evidence that supports the finding.  Mar.
Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex.), cert. denied,
525 U.S. 1017 (1998).

IV.  Civil Forfeiture Law








Chapter 59 of the Texas Code
of Criminal Procedure prescribes the procedures governing civil forfeiture,
which is an in rem proceeding against contraband.  State v. Silver Chevrolet Pickup, 140
S.W.3d 691, 692-93 (Tex. 2004); Hardy v. State, 102 S.W.3d 123, 126‑27
(Tex. 2003).  Under chapter 59, personal
property that has been used in the commission of a felony in violation of
chapter 481 of the Texas Health and Safety Code (the Texas Controlled
Substances Act) is contraband subject to forfeiture.  Tex.
Code Crim. Proc. Ann. art. 59.01(2)(B)(i) (Vernon Supp. 2007); Real
Prop. Located at 4125 Blanton, Wichita Falls v. State, 230 S.W.3d 476, 481
(Tex. App.CFort Worth
2007, pet. denied).  Similarly, money is
subject to forfeiture if it is derived from manufacturing, delivering, selling,
or possessing a controlled substance.  Tex. Code Crim. Proc. Ann. art.
59.01(2); Antrim v. State, 868 S.W.2d 809, 812 (Tex. App.CAustin 1993, no pet.).  Methamphetamine is a controlled substance,
and possession of it is a felony.  Tex. Health & Safety Code Ann. '' 481.102(6) (Vernon
Supp. 2007), 481.115 (Vernon 2003).








In a Chapter 59 forfeiture hearing, the trial court must first
determine whether the property in question is indeed Acontraband@ as defined by the
statute.  Tex. Code Crim. Proc. Ann. arts. 59.01(2), 59.05 (Vernon
2006); 1996 Cadillac and 2002 Lincoln Automobiles v. State, No.
02-07-00017-CV, 2008 WL 163552, at *4 (Tex. App.CFort Worth Jan. 17, 2008, no
pet. h.) (mem. op.). The State must establish, by a preponderance of the
evidence, a substantial nexus or connection between the property to be
forfeited and the statutorily defined criminal activity.  State v. $11,014.00, 820 S.W.2d
783, 785 (Tex. 1991); Forty‑Seven Thousand Two Hundred Dollars U.S.
Currency, et al. v. State, 883 S.W.2d 302, 306 (Tex. App.CEl Paso 1994, writ denied); 1991
Cadillac and 2002 Lincoln Automobiles, 2008 WL 163552, at *4.  Thus, the State must prove, considering all
the evidence, that it is more reasonably probable than not that the seized
property was either intended for use in, or derived from, a violation of the
offenses enumerated in the forfeiture statute. 
$9,050.00 in U.S. Currency v. State, 874 S.W.2d 158, 161 (Tex.
App.CHouston [14th Dist.] 1994,
writ denied).  

The State may prove the required substantial nexus through
circumstantial evidence.  $11,014.00,
820 S.W.2d at 785.  When relying on
circumstantial evidence, the State must offer evidence that raises more than a
mere surmise or suspicion regarding the source of the property or money.  Id. 
However, the State is not required to exclude every possible means by
which a person may have acquired the seized property. $7,058.84 in U.S.
Currency v. State, 30 S.W.3d 580, 586 (Tex. App.CTexarkana 2000, no pet.); Four
Thousand One Hundred Eighty-Two Dollars in U.S. Currency v. State, 944
S.W.2d 24, 27 (Tex. App.CTexarkana 1997, no
writ).  The trial court many draw any and
all reasonable inferences from the circumstances shown by the evidence. $7,058.84,
30 S.W.3d at 586.

V.  Forfeiture of $537.44

In his first point, Bone contends that the evidence was legally
and factually insufficient to support the trial court=s determination that $537.44
was contraband and thus subject to forfeiture under chapter 59 of the code of
criminal procedure.

 

 








A.     Evidence
Offered at the Forfeiture Hearing

Officer Murphy, who was the only witness at the forfeiture
hearing, testified that, based on information from another law enforcement
agency, he suspected Bone of dealing drugs. 
Acting on that information, Officer Murphy stopped cars coming from the
house, and the drivers of those cars verified that Bone was dealing drugs out
of the house.  Trash from the house
contained drug paraphernalia that tested positive for methamphetamine.  Officer Murphy also knew from people living
with Bone and from his own observations on more than ten occasions that the
Dodge truck was driven exclusively by Bone. 

Officer Murphy also testified that the search of Bone=s residence revealed several
items of drug paraphernalia in Bone=s room, including
approximately 500 baggies and weighing scales traditionally used in drug
dealing, both of which had a white residue on them (the officer testified that
the residue was, in his opinion, methamphetamine), and items such as needles
and pipes commonly used to ingest drugs. 
A drug-detecting canine alerted on needles and one of the safes
discovered in Bone=s bedroom.  Furthermore, the police discovered a
camcorder in Bone=s bedroom.  Inside the camcorder was Aa video of [Bone] holding a
meth pipe in his hand, smoking it.@ 








In addition to describing his own investigation just prior to the
execution of the search warrant, Officer Murphy additionally testified to Bone=s prior criminal history of
distributing narcotics.  The State
supported this testimony by submitting into evidence several past judgments
from cases in which Bone had pleaded guilty to either possession of a
controlled substance or possession of a controlled substance with the intent to
deliver.  

On the day that police were executing the search warrant, Bone
arrived in a vehicle containing methamphetamine and several other drugs.  Furthermore, even though Bone had told the
police that he was unemployed at the time, he was carrying $537.44 in cash.  Officer Murphy also stated that, in his
training and experience, drug dealers often possessed sums of cash to purchase
items to make more drugs.  Based on these
observations, Officer Murphy testified that, in his opinion, the money, the
Dodge truck, and all of the other items that the police discovered when they executed
the search warrant were proceeds from or otherwise used in the commission of
narcotics distribution by Bone in violation of chapter 481 of the health and
safety code.

During cross examination, however, Officer Murphy testified that
the police did not take any fingerprints off of the speaker box or the baggie
containing the methamphetamine.  The
officer further stated that he had no personal knowledge that the cash was a
proceed gained from the commission of a felony under chapter 481 of the health and
safety code. 

 








B.     Legal and
Factual Sufficiency of the Evidence

Here, Bone had an extensive criminal history of dealing drugs;
people leaving Bone=s house verified that he was
currently dealing drugs, and trash from Bone=s house indicated that drugs
were present in the house.  Several items
in Bone=s bedroom indicated that he
was dealing drugs, a canine unit alerted to the presence of drugs on needles
and in a safe discovered in Bone=s room, and a videotape in a
camcorder in his room proved that Bone had used methamphetamine.  

Additionally, Officer Murphy testified that in his training and
experience, drug dealers carry quantities of cash on their person for use in
purchasing items for making more drugs; Officer Murphy=s testimony directly linked
the unemployed Bone to over $500 in cash. 
While this evidence alone might be insufficient to establish the nexus
between the cash and felonious activity, the additional evidence from Bone=s history, current dealings,
and items discovered in his room support the trial court=s determination.  Cf. $2067 in U.S. Currency v. State,
745 S.W.2d 109, 111 (Tex. App.CFort Worth 1988, no writ.)
(stating that A[t]he fact that the forfeited
property was found at, or near, the controlled substance does not establish the
nexus between the property and the sale or commercial distribution of a
controlled substance@).  








Therefore, the evidence raises more than a mere surmise or
suspicion that the source of the money on Bone related to drug dealing.  See $11,014.00, 820 S.W.2d at
785.  Given all the evidence that the
only plausible source of income for Bone (the only source explained to
the trial court, as Bone presented no alternative explanation) was from drug
dealing activities, and Bone=s past and present use of
drugs himself, the State demonstrated that it was more probable than not that
the cash was either intended for use in or derived from a violation of chapter
481 and thus constituted contraband subject to forfeiture.  See cf. Fifty-Six Thousand Seven Hundred
Dollars in U.S. Currency v. State, 730 S.W.2d 659, 662 (Tex. 1987) (holding
that a plausible alternative explanation for the presence of a large sum of
money made seized property not subject to forfeiture); $9,050.00 in U.S.
Currency, 874 S.W.2d at 161.








Furthermore, considering only the evidence in support of the trial
court=s judgment, and disregarding
the contrary evidence that a reasonable juror could, there is at least a
scintilla of evidence that the money was derived from or otherwise used in the
sale or distribution of a controlled substance. 
See Uniroyal Goodrich Tire Co., 977 S.W.2d at 334; $11,014.00,
820 S.W.2d at 785.  The evidence is
therefore legally sufficient to support the trial court=s judgment.  See Cont=l Coffee Prods.
Co.,
937 S.W.2d at 450.  Additionally,
considering all of the evidence, we cannot say that the foregoing is so weak or
the evidence to the contrary of the finding (of which there was little) is so
overwhelming that the trial court=s judgment should be set
aside.  See Garza, 395 S.W.2d at
823.  Thus, the evidence is factually sufficient
to support the trial court=s judgment.

Despite the evidence discussed above, Bone rests his argument on
the Antrim case, in which the Austin Ccourt of Appeals set forth five
factors for determining whether evidence is sufficient to support a judgment
granting forfeiture.  See Antrim,
868 S.W.2d at 814.  While this court has
not adopted the same five-factor approach to reviewing forfeiture cases, the
factors nevertheless support the trial court=s determination in this
case.  First, the police discovered the
money on Bone, a man with a long history of dealing drugs and who they
confirmed had recently dealt drugs; additionally, Bone alighted from a vehicle
containing illegal drugs.  See id.
at 814 (noting that a factor for consideration is suspicious activity
consistent with drug trafficking). 








Additionally, even though, under the Antrim factors, the
amount of money at issue in this case is not a large amount, the low amount of
money is not dispositive; Bone was an unemployed man carrying over $500 of
unexplained cash.  See id.;
$7,058.84, 30 S.W.3d at 589. 
Finally, Officer Murphy consistently testified that, in his opinion the
cash, the Dodge truck, and the other property was all being used by Bone in
delivering and distributing narcotics. 
Accordingly, we hold that the evidence is legally and factually
sufficient to support the trial court=s determination.  We therefore overrule Bone=s first point.

VI.  Forfeiture of the Dodge Truck

Bone=s second point is that the
evidence is legally and factually insufficient to support the trial court=s judgment forfeiting the
Dodge pickup truck to the State.

A.     Standing to
Contest Forfeiture

As it did during the hearing at the trial court, the State
contends on appeal that Bone does not have standing to contest the forfeiture
of the Dodge truck.  The State bases its
argument on the fact that Bone was not the registered owner of the
vehicle.  The record reflects that the
title to the truck was in Bone=s wallet when the police
arrested him.  Officer Murphy testified
that the title was an Aopen title.@  The trial court verified that by Aopen title,@ Officer Murphy meant Athe original title, like, an
open title where you can go and sign your name over,@ that Aa person could take, if it
[sic] had the right signatures, and go down to transfer the title.@ 








Bone qualifies as an owner under the forfeiture statute if he is Aa person who claims an
equitable or legal ownership interest in the property.@  See Tex.
Code Crim. Proc. Ann. art. 59.01(6). 
Officer Murphy testified that not only was the Dodge truck driven
exclusively by Bone but that someone who lived with Bone said that the Dodge
truck was Bone=s.  Additionally, Officer Murphy testified that
although the vehicle was technically registered in someone else=s name, it is common for drug
dealers to drive vehicles that they do not technically own.  The evidence established that as the owner of
the truck who had not yet registered his title, Bone had at least an equitable
interest in the Dodge truck and therefore had standing to contest its
forfeiture to the State.  See id.;
First Nat. Bank of El Campo, TX v. Buss, 143 S.W.3d 915, 922 (Tex. App.CCorpus Christi 2004, pet.
denied) (noting that a person in possession of a vehicle who is the intended
owner of the vehicle has an equitable possessory right in the vehicle even if
that person is not named on the vehicle=s title).

B.     Grounds for
Forfeiture

Officer Murphy testified that on the day the police executed the
search warrant, Bone arrived at the house driving the Dodge truck.  Inside the Dodge truck, police discovered
methamphetamine.  This uncontroverted
testimony established that the truck was contrabandCit was used in the commission
of a felonious act, i.e. possessing and transporting methamphetamine.  See Tex.
Code Crim. Proc. Ann. art. 59.01(2)(B)(i); Tex. Health & Safety Code Ann. '' 481.102(6),
481.115.  Bone did not present or elicit
any conflicting evidence as to this point.








Therefore, there is more than a scintilla of evidence to support
the trial court=s finding that the Dodge
truck was subject to forfeiture, and the evidence is legally sufficient to
support the trial court=s judgment.  See Cont=l Coffee Prods.
Co.,
937 S.W.2d at 450.  Furthermore, the
evidence supporting the finding is not so weak, nor is the evidence to the
contrary so overwhelming that the trial court=s judgment should be set
aside.  See Garza, 395 S.W.2d at
823.  Thus, the evidence is also
factually sufficient to support the trial court=s judgment.  See id.

Bone nevertheless relies on the rule enumerated in One 1983
Chevrolet Blazer v. State for the proposition that mere possession of a
felony weight of narcotics in a vehicle does not allow the State to seize that
vehicle.  See 737 S.W.2d 39, 40
(Tex. App.CEl Paso 1987, writ ref=d n.r.e.).  Bone=s reliance on this case,
however, is misplaced, as the statute relied on in that case has since changed
and now includes a specific provision stating that possessing and transporting
methamphetamine (which is a felony) makes the property in which the drugs were
hidden and transported contraband subject to forfeiture.  See 
Tex. Code Crim. Proc. Ann. art.
59.01(2)(B)(i); Tex. Health & Safety
Code Ann. '' 481.102(6), 481.115.  Accordingly, Bone=s second point is overruled. 

 

 








VII.  Conclusion

Having overruled both of Bone=s points, we affirm the trial
court=s judgment.

 

PER CURIAM

 

PANEL B:   WALKER, DAUPHINOT, and HOLMAN, JJ.

Delivered:
March 6, 2008











[1]See Tex. R. App. P. 47.4.





[2]Although
the State sought forfeiture of $574.37, the trial court determined that $36.93
of that amount was not contraband, so the forfeited amount at issue here is
$537.44. 





[3]Bone
does not challenge the validity of this search warrant.