NUMBER 13-06-00158-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


$281,420.00 IN U.S. CURRENCY, Appellant,


v. 

 

THE STATE OF TEXAS, Appellee.


 

 

On appeal from the 398th District Court 

of Hidalgo County, Texas


 


DISSENTING MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Garza and Vela


Dissenting Memorandum Opinion by Justice Vela


 

 I respectfully dissent to the majority's decision to award the $281,420 to Gregorio
Huerta. First, I would hold the trial court correctly granted judgment notwithstanding the
verdict because a directed verdict would have been proper as Huerta totally failed to
establish his right to the property under any theory of law. Second, I would hold the State
established as a matter of law that the $281,420 constituted contraband subject to
forfeiture.

 A. Huerta Proved No Theory Of Law Vesting Him With The Right To Keep The 
 Currency


 I disagree with the majority's opinion awarding Huerta $281,420, because he neither
raised nor proved any legal theory entitling him to retain any portion of the money. The
majority seems to conclude that because it believes that the State failed to prove its right
under the forfeiture statute, the money, by default, goes to Huerta. I view the issues
separately. I believe that the State had the burden of establishing its right to the currency
pursuant to the forfeiture statute. I also believe that Huerta had the burden to establish his
right to the funds under some theory of law other than by default.

 Question No. 2 asked the jury, "Do you find by a preponderance of the evidence that
the intervener [Huerta] was in actual or joint possession of the currency at the time of
seizure?" (emphasis added). The jury responded in the affirmative. In response to
Question No. 3, (1) the jury awarded him $70,000.

 The majority holds that Huerta is entitled to $281,420 because

 The record reflects that Huerta, the bailee in possession of the Freightliner
where the currency was found, was the individual who found the currency. 
The record further reflects that Huerta gave consent to DPS and U.S.
Customs officers to search the Freightliner and its contents on two
occasions, thereby supporting the jury's finding that Huerta was in
possession of the currency at the time of seizure. Accordingly, we find that
more than a scintilla of competent evidence supports the jury's conclusion
that Huerta was in possession of the Freightliner and the currency at the time
of seizure. Because the jury found that the currency was not contraband and
that Huerta was in possession of the Freightliner and currency at the time of
seizure, question three of the jury charge was immaterial.


$281,420.00 v. State, 13-06-158-CV, 1008 WL_____, at *____ (Tex. App.-Corpus Christ
Mar.____, 2008, no pet. h.) (mem. op.).

 The charge, however, did not include a question about whether Huerta was either
in possession of the Freightliner at the time of seizure or whether he was a bailee at the
time of seizure. Accordingly, the jury did not make a finding on either issue. Even
assuming that Huerta established as a matter of law that he was the bailee in possession
of the Freightliner at the time of seizure, that does not entitle him to any portion of the
$281,420.

 For the purposes of the forfeiture statute, article 59.01(8) states that seizure

 means the restraint of property by a peace officer under Article 59.03(a)
[seizure with a search warrant] or (b) [seizure without a search warrant] of
this code, whether the officer restrains the property by physical force or by
a display of the officer's authority, and includes the collection of property or
the act of taking possession of property.


Tex. Code Crim. Proc. Ann. art. 59.01(8) (Vernon Supp 2007); State v. Silver Chevrolet
Pickup, 140 S.W.3d 691, 694 (Tex. 2004) (per curiam).

 At the time the $281,420 was seized, Jesus Pulido was the Freightliner's registered
owner. By virtue of his ownership interest in the Freightliner, he owned everything inside
the Freightliner, including the $281,420. The fact that Huerta found the $281,420 inside
the Freightliner did not give him an ownership interest in the money superior to that of
Pulido. The evidence does not show that Pulido relinquished his ownership rights either
in the Freightliner or the $281,420 prior to seizure. Furthermore, Huerta had been paid for
his towing services prior to his discovery of the $281,420. There is no evidence to show
that Huerta was an interest holder in either the Freightliner or the $281,420 at the time the
money was seized. At the time Pulido relinquished his claim to the $281,420, law-enforcement authorities were in possession of the money, not Huerta.

 I also believe that the burden was on Huerta to establish his own right to the
currency because he clearly was not the owner of the Freightliner or its contents. No issue
was submitted to the jury that would have given Huerta the right to recover money that he
clearly did not own. I agree with the majority that question three was immaterial, and I
would go further and hold that there was not a single material issue submitted to the jury
to allow Huerta to recover. Even if the trial court incorrectly granted a JNOV with regard
to the issue of whether the seized money was contraband, there is still no legal basis to
allow Huerta to recover. At best, he was a bailee. A bailment is a delivering of a thing
under which the bailee acquires an independent and temporary exclusive possession for
a specific purpose. Northcutt v. State, 131 S.W. 1128, 1130 (Tex. Crim. App. 1910). A
mere temporary bailment did not grant him permanent possession to the property seized. 
The most that Huerta can show is that he was in temporary possession of the Freightliner
for purposes of towing. There were no issues submitted to the jury to show either that he
was entitled to the property because it was abandoned by the owner or that a contract for
reward had been entered into. There is simply no legal basis for Huerta to recover. Texas
law provides avenues for determining entitlement to abandoned property. For instance,
section 72.101 of the Texas Property Code outlines the presumption of abandonment. 
Tex. Prop. Code Ann. § 72.101 (Vernon 2007). Here, the majority presumes that the
money must go to the State or to Huerta. I believe that each party was required to prove
its own entitlement. If Pulido, as owner of the currency, abandoned his right to the
currency, measures should have been taken to process the money as abandoned property.
I believe the State proved its entitlement to the currency. But even if it didn't, there was no
issue submitted to the jury entitling Huerta to recover the money. 

 I would hold that Huerta has failed to establish as a matter of law that he is entitled
to the $281,420 or any portion of the that amount. I would overrule the third issue.

 B. The State Established As A Matter Of Law That The Currency Was 

 Contraband 




 I also believe that the State established as a matter of law that the $281,420 was
contraband. Chapter 59 of the code of criminal procedure authorizes the forfeiture of
contraband, which is defined as:

 (2) property of any nature, including real, personal, tangible, or intangible,
that is:


 * * *


 (B) used or intended to be used in the commission of:


 (i) any felony under Chapter 481, Health and Safety Code (Texas Controlled
Substances Act);


 (ii) any felony under Chapter 483, Health and Safety Code; . . . .


 * * *


 (C) the proceeds gained from the commission of a felony listed in Paragraph
(A) or (B) of this subdivision, . . . .


 (D) acquired with proceeds gained from the commission of a felony listed in
Paragraph (A) or (B) of this subdivision, . . . .


Tex. Code Crim. Proc. Ann. arts. 59.01(2)(B)(i), (ii), 2(C), 2(D) (Vernon Supp. 2007). The
Texas Supreme Court has stated that "[m]oney is subject to forfeiture if it is derived from
or intended for use in manufacturing, delivering, selling, or possessing a controlled
substance." State v. $11,014.00, 820 S.W.2d 783, 784 (Tex. 1991). 

 To prevail in a forfeiture proceeding, the State must satisfy a two-part test. First, the
State must show probable cause, (2) or "a reasonable belief a 'substantial connection exists
between the property to be forfeited and the criminal activity defined by the statute.'" Hardy
v. State, 102 S.W.3d 123, 129 (Tex. 2003) (quoting Fifty-Six Thousand Seven Hundred
Dollars in U.S. Currency v. State, 730 S.W.2d 659, 661 (Tex. 1987)). "'It is that link, or
nexus, between the property to be forfeited and the statutorily defined criminal activity that
establishes probable cause, without which the State lacks authority to seize a person's
property.'" Id. (quoting Fifty-Six Thousand Seven Hundred Dollars in U.S. Currency, 730
S.W.2d at 661).

 Second, the State must prove by a preponderance of the evidence that the seized
property is contraband and therefore subject to forfeiture. $18,800 in U.S. Currency v.
State, 961 S.W.2d 257, 260 (Tex. App.-Houston [1st Dist.] 1997, no writ); $162,950 in
Currency of U.S. v. State, 911 S.W.2d 528, 529 (Tex. App.-Eastland 1995, writ denied);
see State v. $11,014.00, 820 S.W.2d at 784. Conviction of an underlying felony is not a
prerequisite to forfeiture. Tex. Code Crim. Proc. Ann. art. 59.05(d) (Vernon 2006).

 Because there is no direct evidence showing that the $281,420 was derived from
or intended for use in manufacturing, delivering, selling, or possessing a controlled
substance, the State was required to present "sufficient circumstantial evidence." Antrim
v. State, 868 S.W.2d 809, 812 (Tex. App.-Austin 1993, no writ). "When relying on
circumstantial evidence, 'the State is required to offer proof which does more than raise
a mere surmise or suspicion regarding the source of the currency.'" Id. (quoting Money of
the United States $8,500.00 v. State, 774 S.W.2d 788, 792 (Tex. App.-Houston [14th Dist.]
1989, no writ)). However, "the State is not required to exclude every other possible way
in which the money might have been acquired; it is required only to prove the fact through
a balance of probabilities." Id.

 In the forfeiture context, there are no concrete rules for courts to apply when
evaluating whether evidence is sufficient to support a judgment granting forfeiture. Id. at
814. When determining whether currency is contraband, courts have considered the
following factors: (1) the manner in which the currency was packaged and wrapped; (3) (2)
suspicious activity consistent with drug trafficking; (4) and (3) the amount of money at issue. (5) 
Here, the evidence showed: (1) Johnny Mercado hired Gregorio Huerta to transport a
Freightliner tractor from Alvin to Mercedes; (2) Jesus Pulido was the Freightliner's
registered owner; (3) when Trooper Torres stopped Huerta near San Juan, Mercado, who
was in a separate vehicle, did not stop; rather, he circled around there two or three times
and left; (4) Trooper Torres testified that the Freightliner's middle axle "was missing
something, which appeared strange;" (5) x-rays of the Freightliner's engine compartment
and two rear axles were dark and inconclusive; (6) both a K-9 search of the Freightliner
and a search of the Freightliner's engine compartment and rear axles by various troopers
revealed no drugs; (7) Huerta removed the oil plug from the bottom of the Freightliner's
axle, stuck his finger in the opening, and, feeling plastic, he opened the Freightliner's hub
compartment where he found twenty to thirty little bundles wrapped in duct tape; (6) (8) these
bundles consisted of packaged currency totaling $281,420; and (9) even though Huerta
notified Mercado about the Freightliner's location and that currency was found in the
Freightliner, Huerta denied hearing anything from either Mercado or Pulido regarding either
the Freightliner or the currency. Furthermore, in its third amended petition, the State noted
that although Mercado and Pulido were served with citation and petition, they did not
answer or appear.

 In sum, the Freightliner was carrying a large amount of currency wrapped in twenty
to thirty bundles hidden in a location that made the currency undetectable to either x-rays
or the nose of a drug-sniffing dog. The evidence also showed that even though a large
amount of cash was found in Pulido's vehicle, he failed to claim it. The amount of currency
at issue is beyond that which ordinary people carry in their vehicles for legitimate business
purposes. Moreover, Huerta presented no evidence concerning the origin of the currency. 
Even though there was no showing of when, where, or from whom the currency was
acquired, the State "is not required to exclude every possible way in which the money
might have been acquired." Spurs v. State, 850 S.W.2d 611, 614 (Tex. App.-Tyler 1993,
writ denied); Antrim, 868 S.W.2d at 812. 

 
I would hold that the uncontradicted evidence of all of the circumstances taken
together shows that the State established as a matter of law the $281,420 is contraband
in that it was derived from or intended for use in manufacturing, delivering, selling, or
possessing a controlled substance and that there is a reasonable belief that a substantial
connection or nexus exists between the $281,420 and the criminal activity defined by the
Texas Controlled Substances Act, e.g., possession or delivery of cocaine. 

 I would overrule Huerta's second issue and affirm the trial court's judgment. 

 

 

 ROSE VELA

 Justice


Dissenting Memorandum Opinion delivered and 

filed this 3rd day of April, 2008.
1. This question asked the jury, "What amount of money should be awarded to the intervener (Write
in a figure between $0.00 and $281,420.00)."
2. Tex. Const. art. 1, § 9.
3. See $24,180.00 v. State, 865 S.W.2d 181, 184 (Tex. App.-Corpus Christi 1993, writ denied)
(evidence that money wrapped in small bundles signifies it was used in drug deal).
4. See Antrim v. State, 868 S.W.2d 809, 814 (Tex. App.-Austin 1993, no writ).
5. See id.
6. Huerta's search of the Freightliner raises the issue of whether a bailee may search the bailed
property without the owner's consent and then claim whatever he or she finds inside the bailed property.