**$567.00 IN U.S. CURRENCY & 1990 Pontiac Firebird LP# K16–WKD (Roosevelt Barnes, Jr.), Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 09–08–00351–CV.

Court of Appeals of Texas, Beaumont.

Submitted on March 11, 2009.

Decided April 2, 2009.

**246**

Roosevelt Barnes, Jr., Huntsville, pro se.

1. The record title owner of the vehicle, Jeffica Brown, was named in the petition but did not

William Lee Hon, Crim. Dist. Atty., Kaycee L. Jones, Asst. Dist. Atty., Livingston, for appellee.

Before McKEITHEN, C.J., KREGER and HORTON, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

Roosevelt Barnes, Jr. appeals the forfeiture of $567.00 in United States currency and a 1990 Pontiac Firebird, identified by license plate K16–WKD.[1] Barnes complains that the trial court did not allow sufficient time for Barnes to obtain bank records and abused its discretion in refusing to appoint counsel. Barnes also contends the evidence supporting the trial court's finding that the subject property is contraband is legally and factually insufficient to sustain the judgment. We hold the trial court did not abuse its discretion in refusing to appoint counsel and in not allowing additional time for Barnes to obtain bank records. However, while we hold the evidence is legally sufficient, we find the evidence is factually insufficient, reverse the judgment as to Barnes, and remand the case to the trial court for a new trial.

■ Forfeitures filed under Chapter 59 of the Texas Code of Criminal Procedure are civil cases that proceed in the same manner as other civil cases. *See* TEX.CODE CRIM. PROC. ANN. art. 59.05(b) (Vernon 2006). Chapter 59 does not provide for appointment of counsel to represent an indigent person in a forfeiture proceeding. A district judge may appoint counsel for an indigent civil litigant. TEX. GOV'T CODE ANN. § 24.016 (Vernon 2004). Barnes did not establish that the public and private interests at stake in his case are so excep-

file an answer. It is not clear from the appellate record if she was served.

tional that the administration of justice would be best served by appointing a lawyer to represent him. *Travelers Indem. Co. v. Mayfield*, 923 S.W.2d 590, 594 (Tex. 1996); *Hall v. Treon*, 39 S.W.3d 722, 724 (Tex.App.-Beaumont 2001, no pet.). Thus, the trial court's refusal of Barnes's request for court-appointed counsel was not an abuse of discretion.

■ Likewise, the trial court did not abuse its discretion in failing to allow Barnes additional time to procure bank records. The hearing was originally scheduled for March 12, 2008. When the trial court realized that Barnes had failed to properly acquire a subpoena, the trial court continued the hearing to a later date and instructed Barnes to obtain the proper forms from the clerk. On June 11, 2008, the trial court denied Barnes's motion to compel a bank to produce records. Barnes did not file a motion for continuance. The hearing reconvened on July 30, 2008. Barnes had obtained service of a subpoena on a witness but the witness did not appear and Barnes did not request an attachment. The trial court did not abuse its discretion by proceeding to rendition of judgment.

■ On appeal, Barnes contends his property was illegally seized because the State failed to prove Barnes had authority to consent to a search. A deputy sheriff testified that when he served an arrest warrant on Barnes at his residence, Barnes gave consent to search the premises. Although Barnes suggests he did not have authority to consent to the search, the trial court could have determined that Barnes shared authority over the residence or that the officer reasonably believed Barnes shared that authority with a co-occupant. *See Georgia v. Randolph*, 547 U.S. 103, 106, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006) ("The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained."). Because the trial court could reasonably find that Barnes consented, the search was valid as to Barnes without a showing of probable cause. *See U.S. v. Freeman*, 482 F.3d 829, 832 (5th Cir.), *cert. denied*, 128 S.Ct. 192, 169 L.Ed.2d 130, 76 U.S.L.W. 3161 (2007).

■ We sustain a challenge to the legal sufficiency of the evidence if: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex.2005) (quoting Robert W. Calvert, *"No Evidence" & "Insufficient Evidence" Points of Error*, 38 Tex. L.Rev. 361, 362–63 (1960)). We must credit favorable evidence if a reasonable factfinder could, and disregard evidence contrary to the finding under review unless a reasonable factfinder could not disregard that evidence. *Id.* at 827.

■ Currency derived from delivering or possessing a controlled substance is contraband subject to forfeiture. *See* Tex. Code Crim. Proc. Ann. art. 59.01(2)(D) (Vernon Supp.2008); Tex.Code Crim. Proc. Ann. art. 59.02(a) (Vernon 2006). In a forfeiture proceeding, the State has the burden to establish by a preponderance of the evidence "a reasonable belief that 'a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute.'" *$56,700 in U.S. Currency v. State*, 730 S.W.2d 659,

661 (Tex.1987) (quoting *United States v. $364,960.00 in U.S. Currency,* 661 F.2d 319, 323 (5th Cir.1981)). Barnes contends there is no evidence that he obtained the seized property through drug dealing.

The lead officer assigned to the Narcotics Division of the Polk County Sheriff's Department testified that Barnes paroled out of the Texas Department of Criminal Justice on a conviction for delivery of a controlled substance in January 2003. An individual cooperating with the Sheriff's Department bought crack cocaine from Barnes on three occasions in July and August 2003. At some point after the cooperating individual purchased twelve rocks of cocaine from Barnes, the officer served an arrest warrant on Barnes and seized the property at issue in this appeal.

During the course of the investigation, Barnes showed no source of income other than the drugs he was selling. The officer conducted surveillance on Barnes and Barnes was never observed going to or coming from a job. The vehicle was registered to Jeffica Brown; she told the officer that the car was actually Barnes's. The person Barnes purchased the vehicle from told the officer that Barnes paid for the vehicle in cash using bills of small denominations. According to the officer, crack cocaine is often purchased with small bills. Thus, the officer concluded that because Barnes had no source of income and paid for the vehicle with small bills, Barnes paid for the vehicle with cash he obtained by selling drugs. The cash seized at the time of Barnes's arrest consisted of five $100 bills, three $20 bills, and seven $1 bills. The officer expressed his opinion that the $567 and the Pontiac Firebird were proceeds of Barnes's illegal activity.

Barnes testified that he was on a joint account with a friend named Kenneth Davis. According to Barnes, Davis had $7,000 and gave Barnes $1,700. Barnes did not say how Davis obtained the money or why Davis gave $1,700 to Barnes. Barnes admitted he was not earning an income, but claimed he worked odd jobs.

The record contains some evidence that the seized property was derived from the sale of a controlled substance. The officer testified that Barnes was dealing drugs and did not have a job. Barnes did not provide documentary evidence to support his claim that he obtained the cash from Davis and failed to explain why Davis would give him such a large sum of money. Barnes purchased the vehicle using bills of small denominations and placed the title in someone else's name although only he used the vehicle. We hold the evidence is legally sufficient to support the trial court's finding that the property seized from Barnes was contraband.

■ Barnes also contends the evidence is factually insufficient. In a factual sufficiency review, we consider and weigh all the evidence, and will set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). Courts have reviewed at least five factors in assessing the sufficiency of the evidence identifying cash as contraband: (1) the proximity of the money to the drugs and to evidence of drug trafficking, (2) evidence that the money was previously in contact with drugs, (3) suspicious activity consistent with drug trafficking, (4) the amount of money at issue, and (5) the presence of expert testimony indicating that there was probable cause to seize the property subject to forfeiture. *Antrim v. State,* 868 S.W.2d 809, 814 (Tex.App.-Austin 1993, no writ).

■ In reviewing a challenge to the sufficiency of the evidence supporting a

claim that money or motor vehicles were proceeds of illegal activity, we look for a substantial connection between the property and illegal activity. *See $56,700 in U.S. Currency,* 730 S.W.2d at 661. "Proof may be made by circumstantial evidence, but the proof must raise more than a mere surmise or suspicion regarding the source of the money." *$43,774.00 U.S. Currency v. State,* 266 S.W.3d 178, 183 (Tex.App.-Texarkana 2008, pet. denied). In *Antrim,* a drug dog alerted on both a box and the $300,000 contained in the box. *Antrim,* 868 S.W.2d at 812–13. Both the box and the money smelled strongly of marijuana and marijuana residue was recovered from the inside of the box. *Id.* at 813. Antrim was making his second 48–hour round trip from Michigan to Texas in less than one month. *Id.* Antrim claimed he inherited the money but could provide no documentation for it. *Id.* The State rebutted Antrim's claim with evidence his father lacked sufficient income to accumulate that amount of money in his lifetime. *Id.* The appellate court concluded the evidence supported the trial court's finding that the money was derived from a narcotics transaction. *Id.* at 815.

In *$43,774.00 U.S. Currency,* there was evidence of a drug dog's positive alert on the hidden compartment where the money was located. *$43,774.00 U.S. Currency,* 266 S.W.3d at 184–85. Expert testimony established that such compartments are generally used to conceal narcotics. *Id.* at 185. The drug dog alert indicated the money had been in recent contact with drugs and the money was packaged in a way illegal narcotics are commonly transported. *Id.* Although the appellant produced documents that showed he had recently sold a business, that sale took place after the seizure. *Id.* at 187. The appellate court determined the sale of a dump truck more than a year earlier was too remote to show it to be the origin of the seized funds.

The appellate court held the evidence was factually sufficient. *Id.* at 188.

■■■ In this case, the officer testified Barnes was a drug dealer, but the property seized at the time of the arrest was not found in proximity to drugs or drug paraphernalia. Barnes had engaged in drug trafficking in the past, but was not shown to have recently engaged in drug trafficking. There was not an inordinately large sum of money involved. The officer testified that the Narcotics Division was interested in Barnes because Barnes "was distributing large amounts of crack cocaine in the Polk County area." Barnes sold cocaine on at least three occasions, as those sales were to a cooperating individual whose purchases were monitored by law enforcement. Barnes did not have a job and had no apparent source of funds other than the drugs he was selling, yet he had $567 in cash and purchased a vehicle for cash using bills of small denominations. The officer offered his professional opinion that the money and the vehicle were proceeds from drug dealing by Barnes.

On the other hand, only tenuous evidence links the seized property to Barnes's criminal activity. The State argued the seized property must be proceeds from illegal activity because Barnes had no other source of income. The evidence that Barnes had no other source of income was based on surveillance but there is no evidence of how long the surveillance was conducted, how extensive it was, or how close in time it was to either the arrest or the purchase of the vehicle. The record does not reflect how much time elapsed between the last observed drug trafficking and Barnes's arrest. Barnes claimed he obtained $1,700 from Davis, but there is no evidence how Davis might have obtained the money. Although Barnes did not explain where Davis's money came from or

identify the reason Barnes had access to Davis's money, the State neither refuted Barnes' testimony nor connected Davis to drug trafficking. The officer testified that purchasing a vehicle with small bills indicated drug trafficking, but the cash seized consisted mainly of $100 bills and the State did not address the discrepancy between the conclusion drawn about small bills and the fact that the money in Barnes's possession did not consist of small bills. Although there is some evidence that at the time of his arrest Barnes was a drug dealer and his lack of legitimate income raises a reasonable inference that whatever money he possessed and used to purchase a vehicle were proceeds from drug trafficking, that evidence is attenuated by the lack of evidence regarding Barnes's activities at the time of his arrest. Under this evidence, it is possible the seized property is contraband because it was acquired by Barnes through illicit drug sales. Reaching that finding under the evidence in this record requires an inference that because Barnes is a drug dealer any property he acquires is contraband. The State failed to strengthen that inference by placing Barnes's acquisition in temporal proximity to his criminal activity, or by showing that the seized property was located in close proximity to contraband or other evidence of illegal activity, or by proving that Barnes could not have acquired the property in the manner he claimed he did, or by proving that the account Barnes claimed he had access to contained funds connected with illegal activity. We hold that the evidence is factually insufficient to support the trial court's judgment of forfeiture. We reverse the judgment and remand the case to the trial court for a new trial.

REVERSED AND REMANDED.

HORTON, J., dissenting.

HOLLIS HORTON, Justice, dissenting.

In my opinion, the evidence was factually sufficient to show that the $567.00 in currency in Barnes's possession was probably used in connection with Barnes's distribution of crack cocaine. Because the majority remands for a new trial when I would affirm, I dissent.

According to the lead officer, Barnes "was distributing large amounts of crack cocaine in the Polk County area." Barnes apparently got out of prison in late January 2003, and the narcotics division, by utilizing a cooperating individual, "started buying crack cocaine from him on ... [July] 28 of [2003]." According to the officer, the narcotic's division bought narcotics from Barnes on three occasions in 2003. From the department's investigation, Barnes "showed no other source of income other than the crack cocaine dealing." After his arrest, Barnes "could show no source of other income." The officer testified that in his opinion, the $567.00 came from "the proceeds of Mr. Barnes' illegal activity dealing crack cocaine here in Polk County."

Barnes did not claim that he had earned the currency. Asked when he was last legally employed, Barnes responded: "I was locked up—I had been locked up for 13 years." According to Barnes, the money had come out of a joint bank account Barnes had with his friend, Kenneth Davis. According to Barnes, he could withdraw money from the joint account "when I get ready." Barnes testified that before his name was added to the account, Davis had given him $1,700.00. Although Barnes served Davis with a subpoena, Davis did not appear during the forfeiture trial.

Barnes was known to the sheriff's department as a drug dealer. He had no legitimate means of support. Barnes of-

fered nothing to explain why Davis would bestow large gifts of cash on him, and the finder of fact, on this record, was entitled to reject Barnes's rather incredible claim that Davis gave him such a large gift. It was a reasonable inference for the finder of fact to conclude the cash probably came from Barnes's only known occupation. The absence of additional evidentiary links to the currency apparently required by the majority does not overcome the inference on the record before us that the money was probably used to facilitate Barnes's dealing in drugs.

In conclusion, as provided by section 59.05(b) of the Texas Code of Criminal Procedure, the State carried its burden of proving by a preponderance of the evidence that the cash was used or intended to be used in the commission of a felony under the Texas Controlled Substances Act. *See* TEX.CODE CRIM. PROC. ANN. art. 59.01(2)(B) (Vernon Supp.2008), art. 59.05(b) (Vernon 2006).