

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

---

### NO. 2-06-434-CV

---

$574.37 U.S. COIN AND                                          APPELLANT
CURRENCY; ONE 1998 DODGE
PICKUP; AND ALL ITEMS
LISTED ON EXHIBIT "A"

V.

THE STATE OF TEXAS                                              APPELLEE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

This is an appeal from the civil forfeiture of $537.44[2] and a 1998 Dodge

pickup truck under chapter 59 of the Texas Code of Criminal Procedure.  In two

---

[1]*See* TEX. R. APP. P. 47.4.

[2]Although the State sought forfeiture of $574.37, the trial court determined that $36.93 of that amount was not contraband, so the forfeited amount at issue here is $537.44.

points, Freddie Bone alleges that (1) the evidence is legally and factually insufficient to support the trial court's finding that the money in the amount of $537.44 and the Dodge truck were contraband and (2) thus that both were improperly forfeited to the State. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In June 2005 Officer Bud Murphy of the Lakeside Police Department, acting on a tip from another law enforcement agency, began investigating Bone for dealing drugs. Officer Murphy began his investigation by questioning people coming from Bone's residence and conducting trash searches, both of which confirmed Officer Murphy's suspicions that Bone was dealing drugs and that drugs were present in Bone's house.

Based on this evidence, Officer Murphy obtained a search warrant for Bone's house, the Dodge pickup truck that Bone drove, and another pickup truck that is not relevant to this appeal.[3] While the police were executing the search warrant, Bone drove up to the house in the Dodge truck with a female companion in the passenger seat.

The search of the house, and specifically of Bone's room, yielded a variety of property that Officer Murphy believed Bone was using in the delivery

---

[3]Bone does not challenge the validity of this search warrant.

2

and distribution of narcotics. Among the discovered items were cash, safes, police scanners, cameras, and cellular telephones. The police also discovered in Bone's room a large amount of drug paraphernalia, including 500 clear baggies that Officer Murphy testified were normally used for narcotics distribution, glass pipes and scales with white residue that the officer believed to be methamphetamine, pipes with marijuana residue, and needles.

After searching Bone's room, the police turned their attention to the Dodge truck. In the floorboard of the single-cab truck, the police noticed a speaker box with a hole drilled in it. Inside the speaker box, the police discovered a clear baggie containing a white powdery substance, which later tested positive for methamphetamine. On Bone's person, the police discovered more cash and the title to the truck.

The police also searched the woman who arrived with Bone in the Dodge truck. On her, police discovered a bag containing several clear baggies with a white residue on them, one bag containing a green leafy substance which later tested positive for marijuana, a syringe, five blue pills, two green pills, and eight white broken pills.

The State sought a ruling from the trial court that the property discovered in Bone's bedroom along with the Dodge truck and the cash were subject to forfeiture. The State alleged that all items of property were contraband under

chapter 59 of the Texas Code of Criminal Procedure because they were used or intended to be used in the commission of a felony under Chapter 481 of the Texas Health and Safety Code (the Texas Controlled Substances Act).

At a hearing on the seizure and intended forfeiture of the property, the State presented the testimony of Officer Murphy; Bone did not present any testimony. At the conclusion of the hearing, the trial court ruled that the cash on Bone's person ($537.44) and the Dodge truck were contraband subject to forfeiture but that the items and the cash ($36.93) found in the bedroom were not. The trial court reasoned that because the Dodge truck was the only place where the police discovered an illegal substance (and not merely residue), anything from inside the vehicle, including items found on Bone's person, was subject to forfeiture. Bone now appeals, challenging the legal and factual sufficiency of the evidence to support the trial court's judgment as to the money found on his person and the Dodge truck.

### III. STANDARD OF REVIEW

In a trial to the court where, as in this case, no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it. *Pharo v. Chambers County*, 922 S.W.2d 945, 948 (Tex. 1996). Where a reporter's record is filed, however, these implied findings are not conclusive, and an appellant may challenge them by raising both legal

4

and factual sufficiency of the evidence points. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). Where an appellant raises such points, the applicable standard of review is the same as that to be applied in the review of jury findings or a trial court's findings of fact. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989). The judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

### A. Legal Sufficiency

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the trial court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable fact-finder could and disregard evidence contrary to the

finding unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002).

Any ultimate fact may be proved by circumstantial evidence. *Russell v. Russell,* 865 S.W.2d 929, 933 (Tex. 1993). A fact is established by circumstantial evidence when the fact may be fairly and reasonably inferred from other facts proved in the case. *Id*. However, to withstand a legal sufficiency challenge, circumstantial evidence still must consist of more than a scintilla. *Blount v. Bordens, Inc.*, 910 S.W.2d 931, 933 (Tex. 1995).

**B. Factual Sufficiency**

An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex.), *cert. denied*, 525 U.S. 1017 (1998).

## IV. CIVIL FORFEITURE LAW

Chapter 59 of the Texas Code of Criminal Procedure prescribes the procedures governing civil forfeiture, which is an in rem proceeding against contraband. *State v. Silver Chevrolet Pickup*, 140 S.W.3d 691, 692-93 (Tex. 2004); *Hardy v. State*, 102 S.W.3d 123, 126-27 (Tex. 2003). Under chapter 59, personal property that has been used in the commission of a felony in violation of chapter 481 of the Texas Health and Safety Code (the Texas Controlled Substances Act) is contraband subject to forfeiture. TEX. CODE CRIM. PROC. ANN. art. 59.01(2)(B)(i) (Vernon Supp. 2007); *Real Prop. Located at 4125 Blanton, Wichita Falls v. State*, 230 S.W.3d 476, 481 (Tex. App.—Fort Worth 2007, pet. denied). Similarly, money is subject to forfeiture if it is derived from

7

manufacturing, delivering, selling, or possessing a controlled substance. TEX. CODE CRIM. PROC. ANN. art. 59.01(2); *Antrim v. State*, 868 S.W.2d 809, 812 (Tex. App.—Austin 1993, no pet.). Methamphetamine is a controlled substance, and possession of it is a felony. TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6) (Vernon Supp. 2007), 481.115 (Vernon 2003).

In a Chapter 59 forfeiture hearing, the trial court must first determine whether the property in question is indeed "contraband" as defined by the statute. TEX. CODE CRIM. PROC. ANN. arts. 59.01(2), 59.05 (Vernon 2006); *1996 Cadillac and 2002 Lincoln Automobiles v. State*, No. 02-07-00017-CV, 2008 WL 163552, at *4 (Tex. App.—Fort Worth Jan. 17, 2008, no pet. h.) (mem. op.). The State must establish, by a preponderance of the evidence, a substantial nexus or connection between the property to be forfeited and the statutorily defined criminal activity. *State v. $11,014.00*, 820 S.W.2d 783, 785 (Tex. 1991); *Forty-Seven Thousand Two Hundred Dollars U.S. Currency, et al. v. State*, 883 S.W.2d 302, 306 (Tex. App.—El Paso 1994, writ denied); *1991 Cadillac and 2002 Lincoln Automobiles*, 2008 WL 163552, at *4. Thus, the State must prove, considering all the evidence, that it is more reasonably probable than not that the seized property was either intended for use in, or derived from, a violation of the offenses enumerated in the forfeiture statute.

*$9,050.00 in U.S. Currency v. State*, 874 S.W.2d 158, 161 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

The State may prove the required substantial nexus through circumstantial evidence. *$11,014.00*, 820 S.W.2d at 785. When relying on circumstantial evidence, the State must offer evidence that raises more than a mere surmise or suspicion regarding the source of the property or money. *Id.* However, the State is not required to exclude every possible means by which a person may have acquired the seized property. *$7,058.84 in U.S. Currency v. State*, 30 S.W.3d 580, 586 (Tex. App.—Texarkana 2000, no pet.); *Four Thousand One Hundred Eighty-Two Dollars in U.S. Currency v. State*, 944 S.W.2d 24, 27 (Tex. App.—Texarkana 1997, no writ). The trial court many draw any and all reasonable inferences from the circumstances shown by the evidence. *$7,058.84*, 30 S.W.3d at 586.

### V. FORFEITURE OF $537.44

In his first point, Bone contends that the evidence was legally and factually insufficient to support the trial court's determination that $537.44 was contraband and thus subject to forfeiture under chapter 59 of the code of criminal procedure.

## A. Evidence Offered at the Forfeiture Hearing

Officer Murphy, who was the only witness at the forfeiture hearing, testified that, based on information from another law enforcement agency, he suspected Bone of dealing drugs. Acting on that information, Officer Murphy stopped cars coming from the house, and the drivers of those cars verified that Bone was dealing drugs out of the house. Trash from the house contained drug paraphernalia that tested positive for methamphetamine. Officer Murphy also knew from people living with Bone and from his own observations on more than ten occasions that the Dodge truck was driven exclusively by Bone.

Officer Murphy also testified that the search of Bone's residence revealed several items of drug paraphernalia in Bone's room, including approximately 500 baggies and weighing scales traditionally used in drug dealing, both of which had a white residue on them (the officer testified that the residue was, in his opinion, methamphetamine), and items such as needles and pipes commonly used to ingest drugs. A drug-detecting canine alerted on needles and one of the safes discovered in Bone's bedroom. Furthermore, the police discovered a camcorder in Bone's bedroom. Inside the camcorder was "a video of [Bone] holding a meth pipe in his hand, smoking it."

In addition to describing his own investigation just prior to the execution of the search warrant, Officer Murphy additionally testified to Bone's prior

criminal history of distributing narcotics. The State supported this testimony by submitting into evidence several past judgments from cases in which Bone had pleaded guilty to either possession of a controlled substance or possession of a controlled substance with the intent to deliver.

On the day that police were executing the search warrant, Bone arrived in a vehicle containing methamphetamine and several other drugs. Furthermore, even though Bone had told the police that he was unemployed at the time, he was carrying $537.44 in cash. Officer Murphy also stated that, in his training and experience, drug dealers often possessed sums of cash to purchase items to make more drugs. Based on these observations, Officer Murphy testified that, in his opinion, the money, the Dodge truck, and all of the other items that the police discovered when they executed the search warrant were proceeds from or otherwise used in the commission of narcotics distribution by Bone in violation of chapter 481 of the health and safety code.

During cross examination, however, Officer Murphy testified that the police did not take any fingerprints off of the speaker box or the baggie containing the methamphetamine. The officer further stated that he had no personal knowledge that the cash was a proceed gained from the commission of a felony under chapter 481 of the health and safety code.

11

## B.     Legal and Factual Sufficiency of the Evidence

Here, Bone had an extensive criminal history of dealing drugs; people leaving Bone's house verified that he was currently dealing drugs, and trash from Bone's house indicated that drugs were present in the house.  Several items in Bone's bedroom indicated that he was dealing drugs, a canine unit alerted to the presence of drugs on needles and in a safe discovered in Bone's room, and a videotape in a camcorder in his room proved that Bone had used methamphetamine.

Additionally, Officer Murphy testified that in his training and experience, drug dealers carry quantities of cash on their person for use in purchasing items for making more drugs; Officer Murphy's testimony directly linked the unemployed Bone to over $500 in cash.  While this evidence alone might be insufficient to establish the nexus between the cash and felonious activity, the additional evidence from Bone's history, current dealings, and items discovered in his room support the trial court's determination. *Cf. $2067 in U.S. Currency v. State*, 745 S.W.2d 109, 111 (Tex. App.—Fort Worth 1988, no writ.) (stating that "[t]he fact that the forfeited property was found at, or near, the controlled substance does not establish the nexus between the property and the sale or commercial distribution of a controlled substance").

12

Therefore, the evidence raises more than a mere surmise or suspicion that the source of the money on Bone related to drug dealing. *See $11,014.00*, 820 S.W.2d at 785. Given all the evidence that the only plausible source of income for Bone (the *only* source explained to the trial court, as Bone presented no alternative explanation) was from drug dealing activities, and Bone's past and present use of drugs himself, the State demonstrated that it was more probable than not that the cash was either intended for use in or derived from a violation of chapter 481 and thus constituted contraband subject to forfeiture. *See cf. Fifty-Six Thousand Seven Hundred Dollars in U.S. Currency v. State*, 730 S.W.2d 659, 662 (Tex. 1987) (holding that a plausible alternative explanation for the presence of a large sum of money made seized property not subject to forfeiture); *$9,050.00 in U.S. Currency*, 874 S.W.2d at 161.

Furthermore, considering only the evidence in support of the trial court's judgment, and disregarding the contrary evidence that a reasonable juror could, there is at least a scintilla of evidence that the money was derived from or otherwise used in the sale or distribution of a controlled substance. *See Uniroyal Goodrich Tire Co.*, 977 S.W.2d at 334; *$11,014.00*, 820 S.W.2d at 785. The evidence is therefore legally sufficient to support the trial court's judgment. *See Cont'l Coffee Prods. Co.*, 937 S.W.2d at 450. Additionally, considering all of the evidence, we cannot say that the foregoing is so weak or

13

the evidence to the contrary of the finding (of which there was little) is so overwhelming that the trial court's judgment should be set aside. *See Garza*, 395 S.W.2d at 823. Thus, the evidence is factually sufficient to support the trial court's judgment.

Despite the evidence discussed above, Bone rests his argument on the *Antrim* case, in which the Austin Ccourt of Appeals set forth five factors for determining whether evidence is sufficient to support a judgment granting forfeiture. *See Antrim*, 868 S.W.2d at 814. While this court has not adopted the same five-factor approach to reviewing forfeiture cases, the factors nevertheless support the trial court's determination in this case. First, the police discovered the money on Bone, a man with a long history of dealing drugs and who they confirmed had recently dealt drugs; additionally, Bone alighted from a vehicle containing illegal drugs. *See id.* at 814 (noting that a factor for consideration is suspicious activity consistent with drug trafficking).

Additionally, even though, under the *Antrim* factors, the amount of money at issue in this case is not a large amount, the low amount of money is not dispositive; Bone was an unemployed man carrying over $500 of unexplained cash. *See id.*; *$7,058.84,* 30 S.W.3d at 589. Finally, Officer Murphy consistently testified that, in his opinion the cash, the Dodge truck, and the other property was all being used by Bone in delivering and distributing

14

narcotics. Accordingly, we hold that the evidence is legally and factually sufficient to support the trial court's determination. We therefore overrule Bone's first point.

## VI. FORFEITURE OF THE DODGE TRUCK

Bone's second point is that the evidence is legally and factually insufficient to support the trial court's judgment forfeiting the Dodge pickup truck to the State.

### A. Standing to Contest Forfeiture

As it did during the hearing at the trial court, the State contends on appeal that Bone does not have standing to contest the forfeiture of the Dodge truck. The State bases its argument on the fact that Bone was not the registered owner of the vehicle. The record reflects that the title to the truck was in Bone's wallet when the police arrested him. Officer Murphy testified that the title was an "open title." The trial court verified that by "open title," Officer Murphy meant "the original title, like, an open title where you can go and sign your name over," that "a person could take, if it [sic] had the right signatures, and go down to transfer the title."

Bone qualifies as an owner under the forfeiture statute if he is "a person who claims an equitable or legal ownership interest in the property." *See* TEX. CODE CRIM. PROC. ANN. art. 59.01(6). Officer Murphy testified that not only

15

was the Dodge truck driven exclusively by Bone but that someone who lived with Bone said that the Dodge truck was Bone's. Additionally, Officer Murphy testified that although the vehicle was technically registered in someone else's name, it is common for drug dealers to drive vehicles that they do not technically own. The evidence established that as the owner of the truck who had not yet registered his title, Bone had at least an equitable interest in the Dodge truck and therefore had standing to contest its forfeiture to the State. *See id.*; *First Nat. Bank of El Campo, TX v. Buss*, 143 S.W.3d 915, 922 (Tex. App.—Corpus Christi 2004, pet. denied) (noting that a person in possession of a vehicle who is the intended owner of the vehicle has an equitable possessory right in the vehicle even if that person is not named on the vehicle's title).

## B. Grounds for Forfeiture

Officer Murphy testified that on the day the police executed the search warrant, Bone arrived at the house driving the Dodge truck. Inside the Dodge truck, police discovered methamphetamine. This uncontroverted testimony established that the truck was contraband—it was used in the commission of a felonious act, i.e. possessing and transporting methamphetamine. *See* TEX. CODE CRIM. PROC. ANN. art. 59.01(2)(B)(i); TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.115. Bone did not present or elicit any conflicting evidence as to this point.

16

Therefore, there is more than a scintilla of evidence to support the trial court's finding that the Dodge truck was subject to forfeiture, and the evidence is legally sufficient to support the trial court's judgment. *See Cont'l Coffee Prods. Co.*, 937 S.W.2d at 450. Furthermore, the evidence supporting the finding is not so weak, nor is the evidence to the contrary so overwhelming that the trial court's judgment should be set aside. *See Garza*, 395 S.W.2d at 823. Thus, the evidence is also factually sufficient to support the trial court's judgment. *See id.*

Bone nevertheless relies on the rule enumerated in *One 1983 Chevrolet Blazer v. State* for the proposition that mere possession of a felony weight of narcotics in a vehicle does not allow the State to seize that vehicle. *See* 737 S.W.2d 39, 40 (Tex. App.—El Paso 1987, writ ref'd n.r.e.). Bone's reliance on this case, however, is misplaced, as the statute relied on in that case has since changed and now includes a specific provision stating that possessing and transporting methamphetamine (which is a felony) makes the property in which the drugs were hidden and transported contraband subject to forfeiture. *See* TEX. CODE CRIM. PROC. ANN. art. 59.01(2)(B)(i); TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.115. Accordingly, Bone's second point is overruled.

### VII. CONCLUSION

Having overruled both of Bone's points, we affirm the trial court's judgment.

PER CURIAM

PANEL B:   WALKER, DAUPHINOT, and HOLMAN, JJ.

Delivered: March 6, 2008