

NUMBER 13-12-00365-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

WILLIAMS FARMS PRODUCE
SALES, INC.,                                                   Appellant,

v.

R & G PRODUCE COMPANY,                                      Appellee.

On appeal from the County Court at Law No. 1
of Cameron County, Texas.

# O P I N I O N

**Before Chief Justice Valdez and Justices Benavides and Longoria**
**Opinion by Chief Justice Valdez**

By one issue, appellant, Williams Farms Produce Sales, Inc., appeals the trial court's order requiring it to turn over all non-exempt property, including a cause of action that the trial court determined Williams Farms Produce Sales, Inc. had asserted in federal court in South Carolina. Williams Farms Produce Sales, Inc. argues that the trial court abused its discretion because appellee, R&G Produce Company (R&G), did not present

"competent and admissible evidence" that Williams Farms Produce Sales, Inc. was the owner of the cause of action subject to the order. We affirm.

## I. BACKGROUND

On May 28, 2008, R&G filed a cause of action against Williams Farms Produce Sales, Inc. for its failure to pay on a purchase of tomatoes.[1] After several amendments, R&G asserted causes of action for breach of contract, violations of the Theft Liability Act, joint enterprise, and negligence. Following a trial, the jury found in favor of R&G and determined that it incurred $2,332,596.44 in damages. The trial court ordered Williams Farms Produce Sales, Inc. to pay R&G the amount of damages found by the jury plus prejudgment interest and attorney's fees.

On March 19, 2012, following the judgment, the trial court issued an order enjoining Williams Farms Produce Sales, Inc. "from dissipating or transferring assets to avoid satisfaction of the judgment." Subsequently, Williams Farms Produce Sales, Inc. filed an affidavit claiming it had negative net worth. In response, on April 10, 2012, R&G filed a contest to William's Farms Produce Sales, Inc.'s net worth affidavit. The trial court held a hearing on the affidavit and contest. After the hearing, the trial court issued an "Order Sustaining R&G Produce Company's Contest to Judgment Debtor's Net Worth Affidavit" in which it determined that Williams Farms Produce Sales, Inc.'s net worth was $2 million and ordered it to post a bond.

On April 18, 2012, R&G filed an application for turnover relief, asserting that Williams Farms Produce Sales, Inc. had a net worth that was less than the judgment,

---

[1] We provided a more detailed recitation of the underlying facts of the case in our memorandum opinion in *Williams Farms Produce Sales, Inc. v. R&G Produce sales, Inc.*, 13-12-00165-CV, 2014 WL 354627, at **2–3 (Tex. App.—Corpus Christi Jan. 30, 2014, no. pet. h.).

failed to post a bond, deposit or security in compliance with the trial court's order, and owned a cause of action in federal court in South Carolina seeking money damages from the United States government. The application requested that the cause of action be turned over if Williams Farms Produce Sales, Inc. failed to post a bond in compliance with the court's order.

Subsequently, on April 26, 2012, R&G filed a "Motion for Contempt for Deliberate Violation of Court Order Prohibiting Dissipation or Transfer of Assets." The motion alleged that the day after R&G informed Williams Farms Produce Sales, Inc. of its intent to file a turnover order regarding the cause of action in federal court in South Carolina, the attorney for the plaintiff in the federal case "hastily filed an amended complaint in that action (without leave of court and contrary to federal rule) in which he changed the name of the Plaintiff from WILLIAMS FARMS PRODUCE SALES, INC. to 'WILLIAMS FARMS LLC.'" The motion claimed that when Williams Farms Produce Sales, Inc. amended the pleadings in the federal cause of action, it "transferred an asset (a cause of action) to avoid satisfaction of the judgment, in violation of [the trial court's] orders and injunctions." R&G attached eleven exhibits to its motion including, inter alia:

(1)     a printout of the complaint in the federal case *Williams Farms Produce Sales, Inc. v. United States of America and the United State Food And Drug Administration*, No. 2: 11-cv-01399-cv, dated June 8, 2011, in which Williams Farms Produce Sales, Inc., a South Carolina grower and seller of fruits and vegetables, including tomatoes, claimed money damages for negligence, defamation, slander of title, product/commercial disparagement, unconstitutional taking, and unfair trade practices;

3

(2)    a printout from the website of the South Carolina Secretary of State indicating that Williams Farms of South Carolina, LLC filed as a domestic LLC on April 10, 2012. The page, in the address bar, displays the URL, http://www.soc.sc.gov;

(3)    an email sent from Mark Ball, attorney for the plaintiff in the federal cause of action, to R&G's trial attorney in which Ball stated that the cause of action in question was the property of Williams Farms, LLC and that "any actions by R&G that affect this litigation orin [sic] any way adversely affect Williams Farms, LLC interest may result in liability to R&G";

(4)    a copy of the civil docket for "*Williams Farms Produce Sales, Inc. v. United States of America et al*" stating that it was printed from https://ecf.scd.uscourts.gov on April 26, 2012; the docket sheet indicated that Williams Farms Produce Sales, Inc. filed its complaint in the federal case on June 8, 2012 and that Williams Farms Produce Sales, Inc. subsequently filed a motion to modify the complaint on April 23, 2012; and,

(5)    a printout of an amended complaint styled *Williams Farms LLC v. United States of America and the United States Food and Drug Administration* dated April 23, 2012.

On April 30, 2012, Williams Farms Produce Sales, Inc. filed its response to R&G's application for turnover relief stating that it informed R&G "that in the case styled *Williams Farms Produce Sales, Inc. v. United States of America and the United States Food And Drug Administration*, . . . that Williams Farms Produce Sales, Inc. was incorrectly named as the Plaintiff in said lawsuit. That suit has been amended." Williams Farms Produce

4

Sales, Inc. argued that, therefore, the federal case could not be "turned over because the causes of action set forth in that suit are not owned by Defendant Williams Farms." Williams Farms Produce Sales, Inc. attached a copy of the amended complaint in the federal case to its response. The amended complaint lists Williams Farms, LLC as the plaintiff and is dated April 23, 2012.

On May 1, 2012, the trial court held a hearing on R&G's motion for contempt and application for turnover relief. At the hearing, R&G admitted into evidence the 11 exhibits that were attached to its motion for contempt as exhibits 1 through 11, along with three additional exhibits, marked 3A, 11A, and 12. Williams Farms Produce Sales, Inc.'s trial attorney objected, stating, "All of these exhibits are hearsay. None of them are authenticated. None of them are properly admissible into evidence. I'm going to object to every single one." He further stated, "These are evidentiary hearings that must be supported by competent and admissible evidence. I still feel that the evidence that the court admitted is not admissible." The trial court overruled the objections.

On May 4, 2012, the trial court issued an order finding that the federal cause of action was owned by appellant Williams Farms Produce Sales, Inc. "despite the amended complaint" and requiring it to turn over "all non-exempt property that is in the debtor's possession or subject to debtor's control, including but not limited to all causes of action asserted by the Plaintiff in Civil Action No. 2: 11-cv-01399-cv, pending in the United States District Court, For the District of South Carolina, Charleston Division, together with all documents or record related to the property, to a designated sheriff or constable for execution." In the order, the trial court specifically took judicial notice of its file.

5

On May 15, 2012, the trial court issued a contempt order, which included, inter alia, the findings that:

(1) "On April 10, 2012, minutes after the hearing on the contest to the net worth affidavit concluded, a Limited Liability Company named 'Williams Farms of South Carolina L.L.C.' was formed in South Carolina. The organizer was Mark T. Williams, the Vice President of WILLIAMS FARMS PRODUCE SALES, INC., is a 20% owner, and was a corporate representative for the judgment debtor at trial. The registered agent of the L.L.C. is WILLIAMS FARMS PRODUCE SALES, INC. lawyer Mark D. Ball. Records from the Secretary of State of South Carolina, including the receipt showing the filed date and time, were marked as exhibit 3A, and admitted in evidence at the May 1, 2012 hearing on the motion for contempt";

(2) "On April 23, 2012, [the attorney for the plaintiff], amends the complaint in federal court, deleting WILLIAMS FARMS PRODUCE SALES, INC. as the plaintiff and naming instead 'Williams Farms, LLC' as the plaintiff"; and,

(3) "'Williams Farms, LLC'" does not exist according to the Secretary of State of South Carolina document marked as Exhibit 11A, and admitted into evidence at the May 1, 2012, hearing on the motion for contempt."

The court concluded that Williams Farms Produce Sales, Inc. was in contempt of court for violating its "Order Enjoining Judgment Debtors Transfer or Dissipation of Assets."

Williams Farms Produce Sales, Inc. now appeals from the turnover order issued by the trial court.

## II.  STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's entry of a turnover order using an abuse-of-discretion standard. *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex. 1991). A trial court's issuance of a turnover order, even if predicated on an erroneous conclusion of law, will not be reversed for an abuse of discretion if the judgment is sustainable for any reason. *Id.* A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *Black v. Shor*, ___ S.W.3d

6

___, No. 13-11-00570-CV, 2013 WL 1687538, at *2 (Tex. App.—Corpus Christi Apr. 18, 2013, no pet.) (citing *Tanner v. McCarthy*, 274 S.W.3d 311, 321–22 (Tex. App.—Houston [1st Dist.] 2008, no pet.)).

A trial court's issuance of a turnover order is governed by Texas Civil Practice and Remedies Code section 31.002. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.002 (West 2008). Under that section, a judgment creditor is entitled to a turnover order to reach property to obtain satisfaction on a judgment "if the judgment debtor owns property. . . that: (1) cannot readily be attached or levied on by ordinary legal process; and (2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities." *Id.* "The turnover statute is purely procedural; its purpose is to ascertain whether an asset is either in the judgment debtor's possession or subject to its control." *Shor*, ___ S.W.3d ___, 2013 WL 1687538, at *2. The trial court may order the judgment debtor to turn over nonexempt property to a designated sheriff or constable for execution, may otherwise apply the property to the satisfaction of the judgment, or may appoint a receiver with the authority to take possession of the nonexempt property, to sell it, and to pay the proceeds to the judgment creditor as required to satisfy the judgment. *Id.* § 31.002(b). The trial court is not required to identify in the order the specific property subject to turnover. *Id.* § 31.002(h).

The turnover statute itself does not require notice and a hearing prior to issuance of a turnover order. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.002; *see Ex parte Johnson*, 654 S.W.2d 415, 418 (Tex. 1983) (stating that notice and hearing prior to issuance of the turnover order was not required under predecessor statute); *Sivley v. Sivley*, 972 S.W.2d 850, 860 (Tex. App.—Tyler 1998, no pet.) ("The statute itself does not

7

provide for notice or a hearing to be afforded a judgment debtor in a turnover proceeding."). Nevertheless, the trial court "must have some evidence before it that establishes that the necessary conditions for the application of 31.002 exist." *Tanner*, 274 S.W.3d at 322. The conditions that must be met are:

(1)    the entity that is to receive aid must be a judgment creditor;

(2)    the court that would grant aid must be one of appropriate jurisdiction;

(3)    the aid to be given must be in order to reach property to obtain satisfaction on the judgment; and

(4)    the judgment debtor must own property (including present or future rights to property) that:

        (a)    cannot be readily attached or levied on by ordinary legal process and

        (b)    is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.

TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(a); *Tanner*, 274 S.W.3d at 322. Therefore, issuance of a turnover order requires "a factual showing" that the judgment debtor owns non-exempt property that is not readily subject to ordinary execution and "proof of the necessary facts." *Shor*, ___ S.W.3d ___, 2013 WL 1687538, at *2; *Clayton v. Wisener*, 169 S.W.3d 682, 684 (Tex. App.—Tyler 2005, pet. denied). The trial court must have some evidence before it that establishes that the necessary conditions for the application of section 31.002 exist. *Tanner*, 274 S.W.3d at 322. A trial court therefore abuses its discretion by entering a turnover order if there is not at least some probative evidence of the necessary facts supporting the trial court's decision.[2] *See Shor*, ___ S.W.3d ___,

_____

[2] In previous cases, we have overturned turnover orders when there was no evidence presented to support the order. *Black v. Shor*, ___ S.W.3d ___, No. 13-11-00570-CV, 2013 WL 1687538, at *2 (Tex. App.—Corpus Christi Apr. 18, 2013, no pet.); *Gerdes v. Kennamer*, No. 13–06–00175–CV, 2007 WL 12017518, at *2 (Tex. App.—Corpus Christi Apr. 5, 2007, no pet.) (mem. op.). In *Gerdes v. Kennamer*,

2013 WL 1687538, at *2; *Wisener,* 169 S.W.3d at 683; *see also Gerdes v. Kennamer*, No. 13–06–00175–CV, 2007 WL 12017518, at *2 (Tex. App.—Corpus Christi Apr. 5, 2007, no pet.) (mem. op.).

### III.    DISCUSSION

At issue in the present case is whether there was some probative evidence providing "proof of the necessary facts" supporting the trial court's finding that Williams Farms Produce Sales, Inc. owned the federal cause of action subject to the turnover order.[3]  *See Shor*, ___S.W.3d___, 2013 WL 1687538, at *2; *Tanner,* 274 S.W.3d at 322. Williams Farms Produce Sales, Inc. argues that the trial court abused its discretion by issuing the turnover order because (1) none of the documents presented by R&G were properly authenticated and therefore they were inadmissible hearsay, and (2) the evidence presented to the trial court, if admissible, shows that the cause of action was the property of Williams Farms, LLC, not Williams Farms Produce Sales Inc.

---

we reversed a turnover order after we concluded that the applicant for turnover relief failed to introduce evidence to support the required element that the property cannot be readily attached or levied by ordinary legal process. 2007 WL 1017518, at *2.  In that case, we specifically noted that motions and arguments of counsel are not evidence and, therefore, concluded that the trial court abused its discretion in granting turnover relief. *Id.*  Moreover, in *Black v. Shor*, we held that a trial court abused its discretion in granting a turnover order because the appellees failed to support their applications for turnover relief by verification or affidavit, and the trial court did not hold an evidentiary hearing on turnover relief. ___S.W.3d___, 2013 WL 1687538, at *2.

[3] In the discussion section of its brief, Williams Farms Produce Sales, Inc. contends, "R&G made no effort to establish, or even imply, that any property sought in the turnover order was not readily subject to ordinary execution."  Appellant, however, does not state the relevant facts of the case that show how the trial court erred by finding that the federal cause of action was not readily subject to ordinary execution, nor does it provide any other argument regarding this issue.  Accordingly, this issue is inadequately briefed. TEX. R. APP. P. 38.1(i) (requiring an appellant's brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").  Moreover, in *Charles v. Tamez*, we held that a cause of action was subject to turnover under the statute because it was a property right not subject to ordinary execution. 878 S.W.2d 201, 205 (Tex. App.—Corpus Christi 1994, writ denied). Therefore, we are not persuaded by Williams Farms Produce Sales, Inc.'s argument, to the extent it has been raised.

9

## A.      Exhibits Not Included in the Appellate Record

As an initial matter, the appellate record does not include exhibits 3A, 11A, and 12. The appellate record also does not include any other parts of the reporter's or clerk's record, which the trial court took judicial notice of and considered in the turnover order, regarding the proceedings that occurred prior to R&G's application for turnover relief, including the portion of the record containing the transcript of the hearing on April 10, 2012. *See Sivley*, 972 S.W.2d at 860 (affirming a trial court's issuance of a turnover order in part because the trial court had already heard evidence on all of the facts supporting its turnover order during three previous hearings). Moreover, Williams Farms Produce Sales, Inc. failed to designate for the appellate record either the missing exhibits or the previous proceedings in the trial court.[4]

Texas Rule of Appellate Procedure 34.6 requires the appellant to designate the exhibits to be included as part of the reporter's record. TEX. R. APP. P. 34.6(b)(1). The burden of providing a record showing error requiring reversal is on the appellant. *Appleton v. Appleton*, 76 S.W.3d 78, 87 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (citing *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990)); *Budd v. Gay*, 846 S.W.2d 521, 523 (Tex. App.—Houston [14th Dist.] 1993, no writ) (holding that, without a sufficient record, the reviewing court cannot determine whether the trial court committed error)); *see also Luna v. Luna*, 13-11-00259-CV, 2012 WL 1073377, at *2 (Tex. App.—Corpus Christi Mar. 29, 2012, no pet.) (mem. op.). We must presume that any evidence

---

[4] In its brief, Williams Farms Produce Sales, Inc. states that, at the hearing, all of the exhibits attached to R&G's motion for contempt were admitted. It then cites pages in the clerk's record where the exhibits can be found. Williams Farms Produce Sales, Inc. further acknowledges exhibits 3A, 11A, and 12 were admitted at the hearing, but only cites the page of the reporter's record where the trial court admitted the exhibits. This indicates that appellant was aware that the documents were not included in the appellate record, but never requested supplementation.

that the appellant failed to designate for the record is sufficient to support the trial court's decision.  *See Wilms v. Americas Tire Co., Inc.*, 190 S.W.3d 796, 803 (Tex. App.—Dallas 2006, pet. denied); *Travelers Indem. Co. of Rhode Island v. Starkey*, 157 S.W.3d 899, 905 (Tex. App.—Dallas 2005, pet. denied) (presuming that a missing exhibit supported a judgment when the exhibit was referenced in the trial court's findings of fact and appellant never attempted to supplement the record); *see also Luna*, 2012 WL 1073377, at *2.

Regardless of the admissibility or probative nature of the exhibits that were included in the appellate record, we cannot reverse the trial court's turnover order for an abuse of discretion, particularly in an appeal based on the lack of evidence to support the order, without all of the documents and transcripts of proceedings that were considered by the trial court.[5]  *See Appleton*, 76 S.W.3d at 87; *Wilms*, 190 S.W.3d at 803; *Starkey*, 157 S.W.3d at 905; *see also Luna*, 2012 WL 1073377, at *2.

Nonetheless, even assuming that the appellate record was complete, we conclude that the trial court did not abuse its discretion because, as discussed below, we determine that R&G provided admissible evidence that supports the trial court's findings.  *Shor*, ___S.W.3d___, 2013 WL 1687538, at *2; *see Tanner,* 274 S.W.3d at 322.

B.    **Admissibility of R&G's Evidence**

Williams Farms Produce Sales, Inc. argues that there was no evidence to support the finding that it owned the federal cause of action because all of the documents provided by R&G were unauthenticated hearsay.  We, however, hold that the printouts from

---

[5] We note that the trial court found in its contempt order that based on exhibit 3A, Williams Farms, LLC filed for incorporation with the Secretary of State on April 10, 2012, and that based on exhibit 11A, Williams Farms, LLC "does not exist" according to the South Carolina Secretary of State.  Neither of these exhibits were provided for our review.  The inclusion of references to these exhibits in the trial court's findings highlights our inability to properly examine the evidence supporting the turnover order.  *See Appleton v. Appleton*, 76 S.W.3d 78, 87 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

11

government websites were self-authenticating under Texas Rule of Evidence 902(5). TEX. R. EVID. 902(5).

Texas Rule of Evidence 902(5) dictates that "[b]ooks, pamphlets, or other publications purporting to be issued by public authority" are self-authenticating. *Id.* Multiple federal district courts have determined that documents printed from government websites are self-authenticating under Federal Rule of Evidence 902(a)(5), the federal counterpart to Texas Rule of Evidence 902(5).[6] *See Williams v. Long*, 585 F. Supp. 2d 679, 689 (D. Md. 2008) (reasoning that "the public authority's selection of the posted information for publication on its website will act as the necessary 'seal of approval' needed to establish that the information came from a public authority for purposes of Rule 902(5)"); s*ee also Paralyzed Veterans of Am. v. McPherson*, C064670SBA, 2008 WL 4183981 at *7 (N.D. Cal. Sept. 9, 2008) (collecting federal cases from multiple jurisdictions holding that printouts from government websites are self-authenticating); *U.S. E.E.O.C. v. E.I. DuPont de Nemours & Co.*, CIV. A. 03-1605, 2004 WL 2347559, at *2 (E.D. La. Oct. 18, 2004). Moreover, the application of the rule in these circumstances is consistent with its plain language as information on a government website is a "publication purporting to be issued by a public authority." *See F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 684 (Tex. 2007) ("As with any statutory provision, our goal is to ascertain legislative intent by examining the statute's plain language.").

Relying on federal case law and the plain language of the statute, we hold that documents printed from government websites are self-authenticating under Texas Rule

---

[6] Under Federal Rule of Evidence 902(5) "a book, pamphlet, or other publication purporting to be issued by a public authority" is self-authenticating. FED. R. EVID. 902(5).

of Evidence 902(5).[7]  *See* TEX. R. EVID. 902(5), *see also Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd*., 337 S.W.3d 846, 857 n.6 (Tex. 2011) ("Where the Federal Rules of Evidence are similar, we may look to federal case law for guidance in interpreting the Texas evidentiary rules."); *Duenez*, 237 S.W.3d at 684.

Here, R&G presented a docket sheet for the federal case styled *Williams Farms Produce Sales, Inc. v. United States of America et al.*  Each page of the docket sheet indicates that it was printed from the uscourts.org website on 4/26/2012 at 1:45 PM.  The docket sheet shows that the original complaint in the case was filed on June 8, 2011.  The docket sheet further reveals that the plaintiff in the case amended the complaint on April 23, 2012.  Additionally, R&G presented a printout from the website of the Secretary of State of South Carolina showing that Williams Farms Produce, LLC filed for registration on April 10, 2012.  Because these documents indicate that they were printed from government websites, we conclude that they were self-authenticating under Texas Rule of Evidence 902(5).[8]  *See* TEX. R. EVID. 902(5).  The trial court therefore did not err by overruling Williams Farms Produce Sales Inc.'s objections to these documents.

---

[7] In addition, under Texas law, evidence may be authenticated by its "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances" that support a finding that a document is what its proponent claims. TEX. R. EVID. 901(b)(4).  While we hold that the documents printed from government websites are self-authenticating under Rule 902(5), we also acknowledge that, because they indicate they originated from government websites, they could also have been internally authenticated under Rule 901(b)(4).  *See id.*; *Tienda v. State,* 358 S.W.3d 633, 647 (Tex. Crim. App. 2012) (holding that printouts from MySpace webpages were admissible because there was sufficient evidence on them indicating that they "were what they purported to be—MySpace pages the contents of which the appellant was responsible for"); *see also U.S. E.E.O.C. v. E.I. DuPont de Nemours & Co.*, CIV. A. 03-1605, 2004 WL 2347559, at *2 (E.D. La. Oct. 18, 2004) (finding that, in addition to being admissible under Federal Rule of Evidence 902(5), an exhibit printed from a government website was also admissible under the Rule 901 because it contained the internet domain address from the website and the date on which it was printed).

[8] We need not determine whether other exhibits were properly admitted because we conclude that the documents discussed above provide sufficient proof of the relevant facts supporting the turnover order.

**C.     Evidence that the Federal Cause of Action was Owned by Williams Farms Produce Sales, Inc.**

Williams Farms Produce Sales, Inc. argues that R&G's evidence, if admissible, reveals that the federal cause of action was incorrectly filed and was subsequently amended to correctly reflect that the plaintiff in the cause of action is Williams Farms, LLC, which is a separate company from Williams Farms Produce Sales, Inc.   However, in its contempt order, after considering the same evidence and arguments it considered in the turnover order, the trial court determined that Williams Farms, LLC was not formed until after the original complaint was filed by Williams Farms Produce Sales, Inc., and that, by filing the amended complaint, Williams Farms Produce, Sales Inc. attempted to transfer ownership of the cause of action in violation of the court's previous order.[9] Moreover, in the turnover order, the trial court specifically found that the federal cause of action was owned by Williams Farms Produce Sales, Inc. "despite the amended complaint."   These findings are supported by the docket sheet showing that Williams Farms Produce Sales, Inc. was listed as the plaintiff in the original complaint and that the style of the case still includes Williams Farms Produce Sales, Inc. as the plaintiff.   The trial court's findings are bolstered further by the information from the South Carolina Secretary of State's website showing that Williams Farms, LLC was created after the

---

[9] The trial court's determination that the Williams Farms Produce Sales, Inc. owned the federal cause of action was supported by other findings in its contempt order, including that the organizer of Williams Farms, LLC was Mark T. Williams, twenty percent owner of and representative at trial for Williams Farms Produce Sales, Inc., and that the registered agent of the Williams Farms, LLC is Williams Farms Produce Sales, Inc. lawyer Mark D. Ball.  The trial court also found that according to the Secretary of State of South Carolina Williams Farms, LLC "does not exist."  All of these findings provide additional evidence supporting the determination that Williams Farm's Produce Sales, Inc. is the proper owner of the federal cause of action.  However, the trial court cited exhibits 3A and 11A as evidence of these findings, and, as noted previously, we cannot properly review this evidence, or determine whether it was admissible, because it is not included in the appellate record.  Regardless, we have found that the evidence provided for our review supports the turnover order.

federal cause of action was filed.[10]  Because its ruling was based on at least some probative evidence that appellant, Williams Farms Produce Sales, Inc., was the proper plaintiff and owner of the federal cause of action, the trial court did not abuse its discretion. *See Shor*, ___S.W.3d___, 2013 WL 1687538, at *2; *See Tanner*, 274 S.W.3d at 322.

We overrule Williams Farms Produce Sales, Inc.'s sole issue.

## IV. CONCLUSION

We affirm the trial court's order.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
27th day of March, 2014.

---

[10] Additionally, the amended complaint in the federal case reveals that the plaintiff in the federal cause of action is "a commercial grower of fruits and vegetables, including tomatoes."  This document was attached to Williams Farms Produce Sales, Inc.'s response to R&G's application for turnover relief filed in the trial court and its admissibility was not challenged by either party at trial or on appeal.  The fact that the LLC and Williams Farms Produce Sales, Inc. engage in the exact same business also supports the trial court's finding that the plaintiff in the federal cause of action is, in fact, Williams Farms Produce Sales, Inc.