In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00478-CV
_____

$201,100.00 U.S. CURRENCY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 75th District Court
Liberty County, Texas
Trial Cause No. CV1306798

MEMORANDUM OPINION

The State initiated forfeiture proceedings to seize $201,100 in United States currency from James Harold Leonard, Nicosa Desha Kane, and Lisa Olivia Leonard ("appellants"). The trial court found that: (1) appellants were the "possessors and/or owners" of the $201,100; (2) the $201,100.00 is contraband; and (3) "[a] substantial connection exists between the $201,100.00 and criminal activity defined by Article 59.01 of the Texas Code of Criminal Procedure." The trial court then awarded the money to the State. In two appellate issues, appellants

1

challenge the denial of their motion for directed verdict and contend that the evidence supports the affirmative defense of innocent owner. We affirm the trial court's judgment.

## Factual Background

Officer Paul Young testified that he took James into custody for a traffic violation and suspicion of money laundering. According to the record, the vehicle was stopped around 3:20 a.m. for speeding and following another vehicle too closely. James was driving the vehicle and Kane was a passenger. James told Young that he was a landlord, was last arrested in 2008, and was in possession of $800. Kane told Young that James worked at an auto body shop, James was last arrested in 2011, and she was in possession of around $1,000. James's driver's license had also been suspended.

Kane consented to a search of the vehicle. During the search, Young found a safe in the trunk. Kane initially claimed that the safe belonged to her and James and she denied that the safe contained a large amount of money. James, however, told Young that the safe belonged to his mother, Lisa, and contained money. Kane changed her story and told Young the safe contained around $10,000. At first, she claimed the money originated from rental income, but later stated that none of the money was rental income. Kane further changed her story, telling Young that the

2

safe contained around $100,000. When Young asked if any of the money derived from the sale of narcotics, Kane responded, "Not most of it." Young contacted Lisa, who claimed that the safe's contents constituted "personal business[]" and she refused to give Young permission to open the safe.

Young obtained a search warrant and discovered that the safe contained approximately $201,000 and a bill of sale for a Pennsylvania home. Young testified that there were no bank bands or demarcations on the money to indicate that the money had been removed from a bank. He explained that the money's packaging suggested currency obtained through drug sales. In an affidavit, Officer John Shaver stated:

> In my experience, carrying large amounts of U.S. currency is commonly associated with the illegal narcotics trade. In my experience, [U.S.] Highway 59 is a main thoroughfare for the transport of U.S. currency and narcotics in the illegal drug trade.

In her deposition, Kane stated that she did not recall James placing the safe in the vehicle and she had no idea what the safe contained. She claimed that she told Young the safe belonged to Lisa and that she simply guessed when she told Young that the safe contained money. She did not recall suggesting that some of the money was derived from narcotics sales. She had no idea how the money was acquired. Lisa testified that she is an internal revenue agent and earns approximately $111,000 per year. She further testified that her husband had

3

received settlement money and she had received an inheritance from her father. When the stock market crashed in 2008, she began storing money in safes. She explained that, in 2008, she sold a home in Pennsylvania for $216,000, deposited $213,000 into a bank account, later removed the funds, and placed them in the safe that Young found in the vehicle. She also testified that she used a majority of these funds to purchase her home in Texas. In her deposition, Lisa explained that in 2012, she took approximately $250,000 to Pennsylvania to purchase another home, purchased a home for $25,000, spent some of the remaining money while in Pennsylvania, and purchased a safe in which to store the remaining money. According to Lisa, James was bringing the safe back to Texas so that Lisa could use the money to purchase a home for James and Kane in Texas. Lisa testified that she is the sole claimant to the money found in the safe.

Motion for Directed Verdict

In issue one, appellants challenge the denial of their motion for directed verdict on grounds that the evidence is legally and factually insufficient. We review a trial court's denial of a motion for directed verdict under a legal sufficiency standard. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005); *Cleveland Reg'l Med. Ctr., L.P. v. Celtic Props., L.C.*, 323 S.W.3d 322, 346 (Tex. App.—Beaumont 2010, pet. denied). We consider whether the evidence "would

4

enable reasonable and fair-minded people to reach the verdict under review." *Wilson*, 168 S.W.3d at 827. We view the evidence in the light most favorable to the verdict, credit favorable evidence if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 770 (Tex. 2010). Under factual sufficiency review, we consider and weigh all the evidence, and will set aside the verdict only if the evidence is so weak or so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). A directed verdict for a defendant may be proper when the plaintiff (1) "fails to present evidence raising a fact issue essential to the plaintiff's right of recovery[;]" or (2) "admits or the evidence conclusively establishes a defense to the plaintiff's cause of action." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

In issue one, appellants contend the trial court erred by denying their motion for directed verdict because the evidence failed to establish that the currency seized from the safe constituted contraband. Within this same issue, appellants present arguments challenging the admission of certain evidence. "A point of error is multifarious when it generally attacks the trial court's order with numerous arguments." *Rich v. Olah*, 274 S.W.3d 878, 885 (Tex. App.—Dallas 2008, no pet.).

5

An appellate court has discretion to consider a multifarious issue if it can determine, with reasonable certainty, the error about which the complaint is made. *Id.*; *Quiroz v. Gray*, 441 S.W.3d 588, 591 (Tex. App.—El Paso 2014, no pet.). Because we are able to determine appellants' complaints with reasonable certainty, we will address them both.

We first address the denial of appellants' motion for directed verdict. "Currency derived from delivering or possessing a controlled substance is contraband subject to forfeiture." *$567.00 in U.S. Currency v. State*, 282 S.W.3d 244, 247 (Tex. App.—Beaumont 2009, no pet.); *see also* Tex. Code Crim. Proc. Ann. arts. 59.01(2)(D), 59.02(a) (West Supp. 2014). The State must establish by a preponderance of the evidence a reasonable belief that there exists a substantial connection between the property to be forfeited and the statutorily-proscribed criminal activity. *$567.00 in U.S. Currency*, 282 S.W.3d at 247. We consider

> (1) the proximity of the money to the drugs and to evidence of drug trafficking, (2) evidence that the money was previously in contact with drugs, (3) suspicious activity consistent with drug trafficking, (4) the amount of money at issue, and (5) the presence of expert testimony indicating that there was probable cause to seize the property subject to forfeiture.

*Id.* at 248.

In this case, the State presented sufficient circumstantial evidence to satisfy its burden of proving that the money constituted contraband. The record indicates

6

that James's vehicle was stopped in the early morning hours and while traveling on a highway that serves as a "main thoroughfare for the transport of U.S. currency and narcotics in the illegal drug trade." James and Kane offered Young inconsistent stories regarding (1) the owner of the safe and its contents; (2) the amount of money in their possession and whether that money derived from rental income; and (3) James's employment and criminal history, which includes narcotics offenses, the most recent of which he failed to disclose. The State admitted a recording of James speaking with a confidential informant, during which James discussed his role in the sale of narcotics. The trial court also heard evidence that Kane indicated that some of the money was acquired through drug sales. Young testified that it is not common for someone to carry a large safe. The trial court heard evidence that carrying large amounts of money is consistent with the illegal narcotics trade and that the money was packaged in such a way as to indicate that it originated from drug sales and not a financial institution.

Viewing the evidence in the light most favorable to the verdict, we conclude that the trial court could reasonably determine that the money was used or intended to be used in the commission of a felony or the proceeds were gained from the commission of a felony. *See* Tex. Code Crim. Proc. Ann. art. 59.01(2); *see also Smith*, 307 S.W.3d at 770. The State was not required to exclude every possible

7

way through which the money may have been acquired. *See $47,200.00 U.S. Currency v. State*, 883 S.W.2d 302, 308-09 (Tex. App.—El Paso 1994, writ denied). The evidence is not so weak, nor so against the great weight and preponderance of the evidence, as to render the verdict clearly wrong and unjust. *See Dow Chem. Co.*, 46 S.W.3d at 242. The trial court did not err by denying appellants' motion for directed verdict.

We now address appellants' challenges to the admission of the following evidence: (1) Richard Miller's testimony regarding an audio recording of James's conversation with an informant; (2) the recorded conversation itself; and (3) a Pennsylvania court summary. "We review a trial court's evidentiary rulings for abuse of discretion." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000).

Miller testified that he participated in a Pennsylvania investigation that involved James, during which he recorded James's conversation with an informant in June 2013. He identified the voices on the recording as those of James and the informant. Appellants took Miller on voir dire, and Miller explained that surveillance of the conversation was being conducted while the audio recording was created. Appellants argued that the recording was not the best evidence of the conversation, was not properly authenticated, and resulted in hearsay, but the trial

8

court overruled their objections.

On appeal, appellants contend the recording was not properly authenticated because Miller was not in the physical presence of James and the informant when the conversation took place. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Tex. R. Evid. 901(a). Examples of authentication include testimony of a witness with knowledge that "an item is what it is claimed to be[]" and "[a]n opinion identifying a person's voice—whether heard firsthand or through mechanical or electronic transmission or recording—based on hearing the voice at any time under circumstances that connect it with the alleged speaker." Tex. R. Evid. 901(b)(1), (5). The record demonstrates that, because of his participation in an investigation involving James, Miller had knowledge that the recording is what it was claimed to be and was able to identify the voices on the recording. *See id.*; *see generally Hines v. State*, 383 S.W.3d 615, 625 (Tex. App.—San Antonio 2012, pet. ref'd). The trial court did not abuse its discretion by admitting the recording into evidence.

The trial court also overruled appellants' objection to admission of a Pennsylvania court summary on grounds that it was not attested to or certified. On appeal, appellants argue that the summary is not a book or pamphlet and that "it is

not clear on the face of the documents that they were purportedly issued by a public authority[.]" An "official publication," *i.e.*, a "book, pamphlet, or other publication purporting to be issued by a public authority[,]" is considered self-authenticating. Tex. R. Evid. 902(5).

According to the State, the summary was printed from the government website of the Allegheny County Court of Common Pleas. The summary is titled "Allegheny County Court of Common Pleas Court Summary" and describes James's active and closed criminal cases, including cause numbers, charged offenses, offense dates, and disposition information. "[I]nformation on a government website is a 'publication purporting to be issued by a public authority.'" *Williams Farms Produce Sales, Inc. v. R&G Produce Co.*, 443 S.W.3d 250, 258 (Tex. App.—Corpus Christi 2014, no pet.). Accordingly, "documents printed from government websites are self-authenticating under Texas Rule of Evidence 902(5)." *Id.* at 259. We conclude that the trial court did not abuse its discretion by admitting the court summary into evidence. We overrule issue one.

## Affirmative Defense

In issue two, Lisa argues that the evidence supported her affirmative

10

defense of being an innocent owner.[1] The innocent owner defense requires a person whose property has been seized for forfeiture to establish, by a preponderance of the evidence, that she: "(a) acquired or perfected her ownership interest before or during the act or omission giving rise to forfeiture; and (b) did not know and reasonably should not have known of that act or omission." *1994 GMC v. State*, No. 14-10-00025-CV, 2011 Tex. App. LEXIS 1625, at **6-7 (Tex. App.—Houston [14th Dist.] Mar. 8, 2011, no pet.) (mem. op.); *see* Tex. Code Crim. Proc. art. 59.02(c).

The trial court heard Lisa's explanation that she has the financial ability to possess a large sum of money and that she sold a home for $216,154.49 in 2008, approximately $213,000 of which she placed in the safe. Her deposition testimony, which was also admitted into evidence, appears to present a different scenario. In her deposition, Lisa claimed to have purchased the safe in 2012 in Pennsylvania and placed the money in the safe when she went to Pennsylvania to purchase a home. Lisa's documents reflecting the sales and purchases of homes and her bank account balances do not explain how the safe came to contain the specific amount

---

[1]Lisa also contends that forfeiture of the funds violates the Eighth Amendment, but the record does not indicate that she presented this argument to the trial court. "[A] claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal." *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993).

of $201,000. Additionally, Lisa claimed only she and her husband could access the safe, but she admitted that someone else, such as Kane, possibly had access to the safe.

Under the circumstances of this case, the trial court could reasonably conclude that Lisa had failed to demonstrate that she acquired or perfected her interest in the money before or during the act giving rise to forfeiture. *See Herrera v. Stahl*, 441 S.W.3d 739, 741 (Tex. App.—San Antonio 2014, no pet.) (The preponderance of the evidence standard "means the greater weight and degree of credible evidence that would create a reasonable belief in the truth of the claim."); *1994 GMC*, 2011 Tex. App. LEXIS 1625, at **6-7; *see also* Tex. Code Crim. Proc. art. 59.02(c). Because Lisa failed to conclusively establish all vital facts in support of her affirmative defense of innocent owner, we overrule issue two and need not address the second prong of the innocent owner affirmative defense. *See Francis*, 46 S.W.3d at 241; *see also Stanley Works v. Wichita Falls Indep. Sch. Dist.*, 366 S.W.3d 816, 825 (Tex. App.—El Paso 2012, pet. denied); *see also* Tex. R. App. P. 47.1. We overrule issue two and affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

12

Submitted on June 18, 2015
Opinion Delivered July 16, 2015

Before McKeithen, C.J., Kreger and Johnson, JJ.